# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-40661

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

HOWARD WILLIAM HALVERSON,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SOUTHWICK, and WILLETT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Howard William Halverson pleaded guilty to possessing child pornography after law enforcement officers found that he possessed 1,863 images of child pornography. He appeals only his sentence. He assigns four errors in his sentence. We find no reversible errors and affirm the judgment of the district court.

## I.

Halverson was charged with possessing images and videos of child pornography involving a prepubescent minor or a minor who had not attained 12 years of age, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). He pleaded guilty to that charge, without the benefit of a plea agreement.

No. 17-40661

Halverson, represented by counsel, agreed with and signed the government's factual-summary sheet. That summary stated that Halverson "knowingly possessed multiple digital images containing visual depictions of minors engaged in sexually explicit conduct." In fact, he possessed 1,863 images.

At his sentencing hearing, the government argued that a five-level enhancement applied to Halverson based on his distributing the pornographic material to others, not for pecuniary gain, but to receive more images of child pornography from those with whom he shared his images. *See* U.S.S.G. § 2G2.2 (b)(3)(B) (2016). Homeland Security Investigations Special Agent Baker, who acted undercover, testified in support of the enhancement. Baker said that Halverson was well-educated in computer systems and that Halverson's use of peer-to-peer network applications gave him preferential access to more child pornography. Baker explained that the result of Halverson's increased sharing would allow him to receive preferential access to his requested downloads. Baker said that Halverson made great efforts to conceal his computer activities; indeed, he possessed documents instructing how to avoid child pornography investigation. Baker further testified that Halverson shared complete files with him, not reconstructed fragments. But Baker stated that Halverson had not sought anything from him in exchange for sharing files. Nevertheless, the district court granted the government's request for the enhancement.

At the time of the final presentence report ("PSR"), the government had indicated that Halverson would receive a three-level reduction for acceptance of responsibility: two for "clearly demonstrat[ing] acceptance of responsibility" and one for "assist[ing] authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." *See* U.S.S.G. § 3E1.1(a)–(b). But, at sentencing, the government refused to move for the assisting-authorities one-level reduction for four

reasons: (1) Halverson did not adequately negotiate with the victims' attorneys, (2) Halverson did not agree that he helped distribute child pornography, (3) Halverson lied about his military service, and (4) Halverson would not help authorities open his other two hard drives. Notwithstanding the government refusal, Halverson requested the court grant him this reduction; the court declined and granted only the other two-level acceptance-of-responsibility reduction.

As a result of these sentencing adjustments (along with various other enhancements not relevant here), Halverson's base offense level was 34. Combined with his criminal history category of I, the court used a Guidelines range of 151 to 188 months. *See* U.S.S.G. ch. 5, pt. A (sentencing table). The government requested that the court sentence Halverson within the Guidelines range, while Halverson urged a non-Guidelines sentence for time served.

Ultimately, the district court sentenced Halverson to 60 months—which was a downward variance of 91 months—followed by a lifetime of supervised release. The district court discussed the seriousness of the offense and said that the harm could not be understated. The court said, nonetheless, that it gave "a just sentence in this case" based on Halverson's "age of 70 years and lack of criminal history prior to this crime." The court told Halverson: "Make no mistake that your age and lack of criminal history are playing a role in my sentencing with the very valid concern brought up by your attorney that applying a guideline sentence would be, in this Court's opinion, a death penalty sentence." Then it said, "For that reason, the Court will grant a variance."

The district court further sentenced Halverson to a lifetime of supervised release. Particularly significant to this appeal is one condition of his supervised release, forbidding him to "subscribe to any computer online service

No. 17-40661

nor . . . access any Internet service during the length of his supervision *unless approved in advance in writing by the United States Probation Officer*."

Finally, the court required Halverson to pay restitution of $50,317.00. The restitution was calculated by awarding six victims $5,000 plus $1,409 per image possessed by Halverson, unless that amount exceeded the amount sought by the victim.[1]

Halverson timely appealed.

## II.

We first take up Halverson's contention that the district court erred by adding a five-level enhancement for "distribut[ing] in exchange for any valuable consideration, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). To be sure, he is correct. The district court erred by applying our holding in *United States v. Groce*, 784 F.3d 291 (5th Cir. 2015), instead of an intervening amendment of the Guidelines. The district court believed that it was required to follow our precedent rather than the amendment. The court happened to be incorrect, but, as discussed below, the error was harmless.

## A.

Before turning to the merits of Halverson's claim, we provide the standard of review. We review the reasonableness of sentencing decisions under a two-step process.

---

[1] The six victims' pseudonyms are "Angela," "Sierra," "Vicky," "John Doe II," "Pia," and "Sarah." Halverson had three images of Angela, so her restitution was $9,227. Halverson had eight images of Sierra, so, under the formula, her restitution was $16,272. But Sierra requested only $10,000, so she received her full request. Halverson had two images of Vicky, so her restitution was $7,818. Halverson had two images of John Doe II, so his restitution was $7,818. Halverson had eight images of Pia, so her restitution under the formula was $17,681. But Pia requested only $5,000, so she received her full request. Halverson had six images of Sarah, so her restitution under the formula was $13,454. Thus, the total amount given to these six victims was $53,317, but the district court reduced the attorneys' fees given to Angela by $3,000 (making her total $6,227), because of an issue related to that attorney itemizing portions of time that were impossible to itemize. Thus, the final number for the restitution was $50,317.00.

No. 17-40661

First, we determine whether the district court committed a significant procedural error, reviewing "the district court's interpretation or application of the sentencing guidelines *de novo,* and its factual findings for clear error." *Id.* at 294 (quoting *United States v. Scott,* 654 F.3d 552, 555 (5th Cir. 2011)). If there was a procedural error, remand is required unless the government can establish that the error was harmless. *See United States v. Delgado–Martinez,* 564 F.3d 750, 752–53 (5th Cir. 2009). "[T]he harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra–Luna,* 628 F.3d 712, 714 (5th Cir. 2010). To satisfy its burden to prove harmless error, the government "must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error." *Id.* at 718 (quoting *United States v. Huskey,* 137 F.3d 283, 289 (5th Cir. 1998)).

Second, if there is no procedural error or the error was harmless, this Court reviews the substantive reasonableness of the sentence under an abuse-of-discretion standard. *Groce,* 784 F.3d at 294.

B.

1.

As stated earlier, the district court committed a significant procedural error by applying our holding from *Groce*—which said that defendants who knowingly use peer-to-peer file sharing software "engage[] in the kind of distribution contemplated by § 2G2.2(b)(3)(B)," *id.*—instead of the amended Guideline, which clarified § 2G2.2(b)(3)(B) and states:

> "The defendant distributed in exchange for any valuable consideration" means the defendant agreed to an exchange with

5

> another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration *from that other person*, such as other child pornographic material, preferential access to child pornographic material, or access to a child.

U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added) (2016).   The commentary previously had said that an increase should be applied for "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit," *id.* (2015), and that previous commentary did not say that the exchange had to involve a defendant receiving the material from the person with whom he bartered.  *Id.*  This language of the previous 2015 version was applied by the *Groce* court.  *See* 784 F.3d at 294.

But because of the change to the Guidelines, the district court should have applied the amended 2016 Guidelines.  The Guidelines note that "[f]ailure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal."  U.S.S.G. § 1B1.7 (2016).  And we have previously held that district courts should follow the contemporary versions of the Guidelines rather than older cases that interpreted prior versions of the Guidelines.  *See United States v. Palacios*, 756 F.3d 325, 326 n.1 (5th Cir. 2014).

The new test for applying the enhancement under U.S.S.G. § 2G2.2(b)(3)(B) requires a court to find: (1) the defendant agreed to an exchange with another person, (2) the defendant knowingly distributed child pornography to that person (3) for the purpose of obtaining something of valuable consideration, and (4) the valuable consideration came from that person.   The government presented evidence to establish the first three elements of that test, but the government failed to present any evidence to show that Halverson distributed any child pornography to receive "something of valuable consideration from that [] person" with whom he traded.  *See*

No. 17-40661

U.S.S.G. § 2G2.2 cmt. n.1.  The burden was upon the government to prove that element by a preponderance of the evidence. *See United States v. Smith,* 13 F.3d 860, 867 (5th Cir. 1994).  It failed to do so.  Thus, the district court procedurally erred by enhancing Halverson's sentence.

2.

Although the district court erred, the question now is whether the procedural error was harmless.

A procedural error is harmless if the error did not affect the district court's choice of sentence. *Delgado–Martinez*, 564 F.3d at 753.  As said above, the harmless-error doctrine applies only if the government "convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Ibarra–Luna*, 628 F.3d at 714. This demonstration is a "heavy burden" and a "high hurdle" for the government.  *Id.* at 714, 717.  "[T]he crux of the harmless-error inquiry is whether the district court *would* have imposed the same sentence, not whether the district court *could* have imposed the same sentence." *Delgado–Martinez*, 564 F.3d at 753.  The record must show "clarity of intent" expressed by the district court, but "such statements do not require magic words." *United States v. Shepherd*, 848 F.3d 425, 427 (5th Cir. 2017).

Here, the district court imposed a sentence of 60 months, a sentence that was 91 months below the minimum of the incorrect Guidelines range and 27 months below the minimum of the correct Guidelines range.  And the district court was clear about why it gave Halverson a significant downward variance. Without mentioning the Guidelines range, the district court explained that Halverson's age of seventy and his lack of criminal history were the reasons for imposing the sixty-month sentence—any longer, according to the district court, would be "a death penalty sentence."

No. 17-40661

So, because the record reflects that the district court would have imposed the same sentence for the same reasons—namely, because of his lack of criminal history and to prevent Halverson from receiving a death sentence due to his age—we hold that the procedural error was harmless.

## C.

As noted above, the second step in our reasonableness analysis when reviewing sentences is to review whether the sentence was substantively reasonable. *Groce*, 784 F.3d at 294. Here, Halverson does not challenge the substantive reasonableness of his sentence, nor could he, considering that the district court went well below the Guidelines to give Halverson a shorter sentence.

## III.

The second alleged sentencing error raised by Halverson is that the district court's restitution was improper. In this respect, he argues that the government did not produce evidence of possession, because all the files found on his computer were incomplete reconstructed files. Halverson further raises a number of arguments related to *Paroline v. United States*, 572 U.S. 464 (2014): that the restitution formula was arbitrary, that the award did not sufficiently follow *Paroline*, and that the court lacked proof regarding the loss amounts that Halverson proximately caused.

We are unconvinced that the district court reversibly erred.

## A.

We turn to the standard of review. If the appellant's claim is that restitution was imposed contrary to law—that is, the Mandatory Victim Restitution Act, 18 U.S.C. § 3664—the standard of review is de novo. *United States v. Sheets*, 814 F.3d 256, 259 (5th Cir. 2016). If, however, the appellant's claim challenges the propriety of the particular award under these statutes, then we review for abuse of discretion. *Id.*

No. 17-40661

B.

We can easily dismiss Halverson's first objection—that his plea and Baker's testimony were insufficient to support possession. There was sufficient evidence to prove possession, because Halverson pleaded guilty to possessing images and Baker testified that Halverson shared "one hundred percent complete files" with him.

C.

We next conclude that the district court sufficiently followed *Paroline* and, in doing so, committed no abuse of discretion in implementing the awards.

The government's restitution formula took the lowest amount requested by a victim, $5,000, and set it as the baseline for each restitution. Then, the government added $1,409—because Halverson possessed 1,409 image files of child pornography on one of his laptops—per image of each victim that Halverson possessed. So, the formula was $5,000 + ($1,409 x number of images of that victim). If that calculation resulted in a sum less than the amount requested by a victim, the government asked for restitution in the victim's requested amount. If it was greater than what the victim requested, the government capped the restitution by the formula. The total amount of restitution ordered, for six known victims that requested restitution, was $50,317.00.[2]

Halverson argues that the government's formula is at odds with *Paroline* and is arbitrary. This challenge is one of law and is reviewed de novo. *See Sheets*, 814 F.3d at 259. He argues that the government's formula did not properly analyze the injuries proximately caused by Halverson and that the district court settled for an arbitrary formula.

---

[2] *See supra* note 1 for the full calculation.

No. 17-40661

Restitution is mandatory in this case: 18 U.S.C. § 2259 states that the defendant must pay the victim "the full amount of the victim's losses," which includes:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

*Id.* § 2259(b)(3). In *Paroline*, the Supreme Court limited the defendant's restitution payment under § 2259 "only to the extent the defendant's offense proximately caused a victim's losses." 134 S. Ct. at 1722. So, a district court "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 1727–28. This determination "cannot be a precise mathematical inquiry"; instead, it involves "the use of discretion and sound judgment." *Id.* at 1728.[3]

Here, as we have earlier suggested, the district court committed no reversible error in its application of *Paroline.* The record reflects that the district court relied "on various factors that bear on the relative causal significance of [Halverson's] conduct in producing victim's losses." The court

---

[3] The Supreme Court listed various factors that a district court could consider: (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses"; (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted)"; (4) "whether the defendant reproduced or distributed images of the victim"; (5) "whether the defendant had any connection to the initial production of the images"; (6) "how many images of the victim the defendant possessed"; and (7) "other facts relevant to the defendant's relative causal role." *Paroline*, 134 S. Ct. at 1728.

relied on the following facts: (1) Halverson possessed images of at least 33 victims, (2) he possessed at least 1,863 images of child pornography on two laptops and one hard drive, and (3) many of the images depicted violent sexual assault of infants, toddlers, pre-pubescents, and adolescents.  Further, when speaking about the formula used by the government, the court said that the formula accounted for each of the victim's total losses while tying the restitution to Halverson's conduct.  The court then went through each victim and applied the formula to each one, explaining the amount that each would receive and why they requested their respective amounts.  Although the district court did not make explicit findings concerning all of the *Paroline* factors, that determination was not necessary; the Supreme Court was clear that these factors are merely "rough guideposts" that "district courts might consider in determining a proper amount of restitution." *Id.*  Further, the Supreme Court observed that the factors "need not be converted into a rigid formula." *Id.*[4]

Thus, we hold that the district court did not err in its restitution award.

---

[4] Tied to his challenge of the restitution order, Halverson argues that many of the psychological reports submitted by the victims did not separate the losses caused by Halverson from the losses caused by other abusers or show how the amounts requested by the victims were justified.  This argument was not raised below, so we review it for plain error only. *United States v. Lewis*, 796 F.3d 543, 546 (5th Cir. 2015).  To show plain error, the defendant must show: "(1) an error or defect not affirmatively waived; (2) that is 'clear or obvious, rather than subject to reasonable dispute'; and (3) that affected his substantial rights." *United States v. Sanchez-Arvizu*, 893 F.3d 312, 315 (5th Cir. 2018), *as revised* (June 22, 2018) (quoting *United States v. Prieto*, 801 F.3d 547, 549–50 (5th Cir. 2015)).  "If these three conditions are satisfied, we may exercise discretion to remedy the error if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Here, even assuming the court erred by using the reports, such error was not plain, because it is not clear that either *Paroline* or § 2259(b)(3) require victims to have a new report drafted in each case that disaggregates a defendant's conduct from all other possible sources of the victims' losses.

No. 17-40661

IV.

The third sentencing error that Halverson urges is the denial of a one-level reduction to his base offense level for acceptance of responsibility.  We hold that there was no error.

A.

The standard of review for this issue is the same as for the five-level enhancement discussed above.  First, we must decide whether the district court committed a significant procedural error.  *Groce*, 784 F.3d at 294.  If not, then we decide whether the sentence was substantively reasonable under an abuse-of-discretion standard.  *Id.*

B.

At the time of the final PSR, the government said that it would ask for an additional one-level reduction for the defendant's timely acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).  At sentencing, however, the government declined to move for that reduction.  Halverson argues that the district court erred by denying his request to grant the one-level reduction to his sentence, even in the absence of the government motion.  He contends that the government based its opposition on a reason not identified in U.S.S.G. § 3E1.1, so he argues that the district court should have applied the one-level reduction even without the government's motion.

U.S.S.G. § 3E1.1(b) provides that a defendant's offense level will be decreased by one additional level if (1) "the defendant qualifies for a decrease under subsection (a)"; (2) "the offense level determined prior to the operation of subsection (a) is level 16 or greater"; and (3) "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid

preparing for trial and permitting the government and the court to allocate their resources efficiently."

Halverson argues that the district court erred in denying the one-level reduction because he pleaded guilty.  He argues that this guilty plea was all that was necessary to "timely notify[] authorities" "of his own misconduct." U.S.S.G. § 3E1.1(b).  He points to Amendment 775 to the Sentencing Guidelines (made effective in 2013), a part of the commentary that states, "The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  U.S.S.G. § 3E1.1(b) cmt. n.6.  He further argues that our decision in *United States v. Palacios* makes clear that an appellate court may review the government's reasons for withholding a § 3E1.1(b) motion.  And, as we have earlier noted, he argues that the government used four factually incorrect reasons to refuse the motion: First, the government said that Halverson did not adequately negotiate with the victims' attorneys to resolve restitution issues.  Halverson, however, argues that he made good-faith efforts to solve restitution issues with the victims prior to the hearing; he further argues that he had the right to say that the evidence (or lack of evidence) presented by the victims allowed him to not pay all of the full claims by the victims.  Second, the government said that Halverson lied to the district court by saying that he did not distribute child pornography.  Halverson argues that he did not lie; instead, he merely made a non-frivolous objection—that the distribution enhancement did not apply to him.  Third, the government said that Halverson had lied about his military service in a mental health evaluation, by saying that he was in the Vietnam War and had seen combat when he had not.  Halverson argues that he did not lie, arguing that he was stationed in Cambodia helping with the Vietnam effort.  Fourth and finally, the government said that Halverson would not help authorities open his other

two hard drives.  Halverson argues that there is no evidence that he refused any government request to decrypt the hard drives.  Further, Halverson argues that even if he did make such a refusal, that refusal has nothing to do with § 3E1.1(b)—the only assistance that he needed to provide was "by timely notifying authorities of his intention to enter a plea of guilty."

In full, Amendment 775 states,

> Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.  The government should not withhold such a motion based on interests not identified in §3E1.1, such as whether the defendant agrees to waive his or her right to appeal.

U.S.S.G. § 3E1.1 cmt. n.6 (citation omitted).  Halverson is correct that, under this amendment, we may examine the reasons why the government withheld the motion.  *See Palacios*, 756 F.3d at 326.  But our ability to review the government's reasons is limited; it extends only to determining whether the government considered an interest within § 3E1.1.  *See United States v. Castillo*, 779 F.3d 318, 323 (5th Cir. 2015).

Here, the government put forward at least two reasons for refusing to move that are fully supportable as considerations under § 3E1.1—Halverson's refusal to help decrypt his hard drives and, secondly, his inadequacy in speaking with the victims' attorneys about restitution.  *See* U.S.S.G. § 3E1.1 cmt. n.1(C) (stating that in determining whether a defendant qualifies for an acceptance-of-responsibility reduction, the government may consider "voluntary payment of restitution prior to adjudication of guilty"), § 3E1.1 cmt. n.1(E) (stating the government may also consider "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the

offense").[5]   Halverson argues that the government was incorrect about his refusing to decrypt the hard drives and that he adequately spoke to the victims' attorneys, but the government has a factual basis for the conclusion it reached. Even if Halverson's view of the facts could be deemed more supportable than the government's view, the commentary does not provide us with the power to weigh the government's factual reasons for withholding the motion.   The government must only limit its reasons for withholding the motion to interests that are contained in § 3E1.1.

In short, from Halverson's point of view, the government's conclusions are incorrect; from the government's point of view, its conclusions are supportable.  These differences are merely different ways of interpreting the facts.  We think that Amendment 775 allows the government to refuse to move, as long as it considers an interest within § 3E1.1.  Thus, we hold that the district court did not err by denying the one-level reduction in the absence of a motion by the government.   Further, we hold that the sentence was substantively reasonable.

## V.

The final alleged error raised by Halverson relates to a special condition of his supervised release, which restricts his internet and computer access.[6]

---

[5] We need not, and do not, address whether the government's other two reasons for declining to move—Halverson's alleged lies about his previous military experience and his refusal to agree that he distributed child pornography—were valid reasons for withholding the motion.

[6] In full, Halverson's supervised-release condition states,

You shall not subscribe to any computer online service, nor shall you access any Internet service during the length of your supervision, unless approved in advance in writing by the United States Probation Officer.   You may not possess Internet capable software on any hard drive, disk, floppy disk, compact, disk, DVD, diskette, magnetic tape, or any other electronic storage media, unless specifically approved in advance in writing by the United States Probation Officer.

So, in essence, Halverson cannot access any internet-capable device unless he receives the specific prior approval of a probation officer.

No. 17-40661

He argues that imposing the restriction unconstitutionally burdens his First Amendment rights, citing the Supreme Court's recent decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017). This case was handed down five days after his sentencing hearing. Halverson further argues that the sentence provides too much discretionary power to the probation officer, depriving Halverson of his right to be sentenced under Article III.[7] We hold that the district court did not commit plain error, so we uphold this condition of Halverson's sentence.

## A.

Because Halverson did not object to this condition of his supervised release at sentencing, we review for plain error. *United States v. Duque–Hernandez*, 710 F.3d 296, 298 (5th Cir. 2013). To find plain error we first must find a legal error or defect that has not been intentionally abandoned—i.e., affirmatively waived—by Halverson. *Puckett*, 556 U.S. at 135. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. *Id.* Third, the error must have affected the appellant's substantial rights, which means that the appellant must show that the error affected the outcome of the district court proceedings. *Id.* Fourth, if the other three prongs are satisfied, the court has discretion to remedy the error, which is exercised only when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

---

[7] Halverson further argues that the computer restriction is an occupational restriction under U.S.S.G. § 5F1.5. He argues that the district court erred by failing to make sufficient factual findings to show that the restriction was reasonably necessary and that there was a reasonably direct relationship between his occupation and the conduct relevant to the conviction. But Halverson waived this argument by raising it for the first time in his reply brief on appeal. *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived.").

No. 17-40661

B.

We first consider Halverson's argument that this supervised-release condition violates the First Amendment in the light of *Packingham*, which addressed a statute that prohibited registered sex offenders from accessing commercial social-networking sites, even after their sentences were completed. 137 S. Ct. at 1733–34, 1737. The Supreme Court held that the North Carolina statute was unconstitutional under the First Amendment. The Court said that the statute did not survive intermediate scrutiny, because the statute "burden[ed] substantially more speech than [was] necessary to further the government's legitimate interests." *See id.* at 1736 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989)). But the driving concern of the Court was the imposition of a severe restriction on persons who had served their sentences and were no longer subject to the supervision of the criminal justice system. *See id.* at 1737 (explaining that "[o]f importance" to the Court was "the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system" and that "[i]t is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences").

Halverson's argument, however, is that if the Supreme Court concluded that "foreclos[ing] access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights," *id.*, then, *a fortiori*, preventing him from accessing the internet entirely also violates those rights. But the government responds that *Packingham* is limited to post-custodial restrictions—i.e., when a defendant has already fully completed his sentence. The government further points to a recent D.C. Circuit case that held, at least for the purposes of plain-error review, that *Packingham* does not apply to a supervised-release condition, because such a condition "is not a post-

17

custodial restriction of the sort imposed on Packingham." *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017). The Second Circuit made a similar observation in *United States v. Browder*, in which it noted that the ban in *Packingham* "extended beyond the completion of a sentence." 866 F.3d 504, 511 n.26 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 693 (2018); *see also United States v. Pedelahore*, No. 1:15-CR-24, 2017 WL 4707458, at *2 (S.D. Miss. Oct. 19, 2017) ("The *Packingham* decision is inapplicable to [the defendant's] circumstances. Even while on supervised release, [the defendant] is serving his criminal sentence, and the Court has broad discretion in establishing the conditions under which [the defendant] will serve the supervised release portion of his sentence.").

We find these decisions—which are consistent with *Packingham*'s limited holding—to be well-reasoned. In any event, the district judge committed no plain error. On its face, *Packingham* addresses circumstances in which the state has completely banned much of a sex offender's internet access *after* he has completed his sentence. Because supervised release is part of Halverson's sentence (rather than a post-sentence penalty), *see* 18 U.S.C. § 3583(a), and because our review is for plain error, we find that *Packingham* does not—certainly not "plainly"—apply to the supervised-release context.

C.

Second, Halverson argues that by assigning his right to internet access to the discretion of his probation officer, he has been denied his "right to be sentenced" under Article III of the Constitution.[8] Essentially, he argues, the

---

[8] Article III, § 2 of the Constitution states,

The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;—to all cases affecting ambassadors, other public ministers and consuls;—to all cases of admiralty and maritime jurisdiction;—to controversies to which the United States shall be a party;—to

probation officer's authority allows that officer to determine the terms of Halverson's punishment. But we find that the implementation or the administration of the special condition ordered by the Article III judge does not subject Halverson to any further punishment that is not embodied in his sentence.

It is certainly true that a district court cannot delegate to probation officers the "core judicial function" of imposing a sentence, including supervised-release conditions. *United States v. Barber*, 865 F.3d 837, 839 (5th Cir. 2017) (quoting *United States v. Franklin*, 838 F.3d 564, 568 (5th Cir. 2016)). Probation officers have the power only to supervise persons on supervised release with respect to all court-imposed conditions and to manage aspects of sentences. *Id.* We have determined that sentencing conditions that "permissibly delegate[] authority to decide the details of a sentence's implementation" comply with Article III, in contrast with those that "impermissibly delegate[] the authority to impose a sentence." *See id.* For example, a judge cannot give a probation officer the discretionary authority to require a defendant to participate in a drug-treatment program or in a mental health program. *See id.* at 839, 842; *Franklin*, 838 F.3d at 566, 568.

Here, the district court ordered Halverson, during supervised release, to "not subscribe to any computer online service," to not "access any Internet service during the length of your supervision," and to "not possess Internet capable software on any hard drive, disk, floppy disk, compact, disk, DVD, diskette, magnetic tape, or any other electronic storage media." This sentence

---

controversies between two or more states;—between a state and citizens of another state;—between citizens of different states;—between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

Halverson's argument is in its simplest expression that Article III vests no judicial power in a probation officer, only in an Article III judge.

precludes all use of the internet by Halverson.  But the sentence itself contains an escape valve during the administration of the sentence by the probation officer: if Halverson receives "approv[al] in advance in writing by the United States Probation Officer," then he may, under that condition, access the internet or own an internet-capable device.  This arrangement is a permissible delegation of implementing the sentence that the district judge has imposed.  *See Barber*, 865 F.3d at 839.  This arrangement does not authorize any imposition of punishment by the probation officer.  It does not allow the probation officer any discretion to subject Halverson to any further punishment.  The full sentence—no access to internet or internet-capable devices, but with an escape valve—has been imposed by the judge.  And the probation officer cannot require the defendant to do anything further that is in the nature of punishment.  Instead, the probation officer may, under a provision of the sentence imposed by an Article III judge, allow suspension from a specific term of the sentence.  Thus, Halverson has not been denied his right to have his sentence imposed by an Article III judicial officer.

To conclude, under plain-error review, Halverson's challenge to this term of his supervised release fails because the court committed no error, plain or otherwise.

## VI.

We sum up what we have held in this opinion: (1) the district court procedurally erred by applying a five-level enhancement under U.S.S.G. § 2G2.2(b)(3) for distribution of child pornography in exchange for valuable consideration, but, under the circumstances presented here, the error was harmless; (2) the district court did not err by awarding $50,317.00 of restitution to six known victims; (3) the district court did not err by denying an additional one-level reduction to Halverson's base offense level for acceptance of responsibility; and (4) Halverson's special condition of supervised release,

No. 17-40661

preventing access to the internet, survives plain-error review.  Accordingly, the judgment of the district court is in all respects

AFFIRMED.