# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2021

Lyle W. Cayce
Clerk

No. 19-11079

United States of America,

*Plaintiff—Appellee*,

*versus*

Michael Dasean Robinson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-98-1

Before Jones, Clement, and Graves, *Circuit Judges*.

Per Curiam:*

Michael Dasean Robinson appeals the 340-month sentence imposed following his conviction for conspiring to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. He argues that his sentence was substantively unreasonable because the court applied

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-11079

what Robinson argues is an unreasonable factor:  a man's (R.B.) suicide months after his girlfriend (B.F.) died from heroin Robinson had supplied. We agree that the man's suicide was improperly considered as a sentencing factor here, but because the judge expressly stated he would render the same sentence even without considering it, the error was harmless, and we AFFIRM Robinson's sentence.

After Robinson pled guilty to the charged offense, the district court moved to sentencing.  The presentence report (PSR) calculated an advisory guidelines sentencing range of 151 to 188 months of imprisonment.  The PSR also noted Robinson's various criminal acts that were not used to determine his guidelines range.  In November 2017, R.B. and his girlfriend, B.F., obtained heroin and cocaine from Robinson.  After using the heroin, B.F. immediately experienced blurred vision and ringing in her ears, and she needed R.B.'s assistance to get to and from the bathroom.  They both fell asleep, and the next morning, R.B. awoke to find B.F. dead from an overdose. After an unsuccessful stint in rehab, R.B. continued to obtain drugs from Robinson until July 2018, when R.B. committed suicide with a firearm. B.F.'s mother provided a written statement in which she said she believed that B.F. had not tried heroin until the night she died.  The PSR noted that B.F.'s heroin overdose death could be a basis for an upward departure under U.S.S.G. § 5K2.21 or an upward variance.

The district court explained in a lengthy and thorough recitation that it had considered various documents in sentencing Robinson.  In particular, the court explained how statements included in several of those documents, which included victim impact statements and investigative reports, linked Robinson to R.B.'s death by suicide.

The district court then adopted the facts set forth in the PSR, as modified by the PSR addenda and the court's own conclusions, including

2

additional findings, which the court indicated were also reasons for an upward departure or variance.  The district court determined that Robinson was "running a virtual supermarket of different kinds of drugs" and that the offense charged seriously understated his criminal activities.  Additionally, the court noted that the conspiracy charged in the information had lasted more than one year and that Robinson had employed unusual methods to distribute drugs by enlisting the help of his victims, who received free drugs for referrals of new customers.  He also encouraged others to recruit clients for him by passing out his phone number to recovering addicts outside methadone clinics.  The district court further noted that Robinson had enlisted the help of his half-brother to distribute drugs and that Robinson was also involved in the distribution of firearms.  Finally, the district court noted Robinson's violent tendencies, such as threatening an assault victim and brutally beating a pregnant woman who then suffered a miscarriage.  Robinson declined to make a statement, and his attorney asked only for a sentence within the guidelines range.

Importantly, when he sentenced Robinson to 340-months in prison, the judge stated that he would impose the same sentence even if he "had not made the definitive finding about the causation between [R.B.'s] suicide and the heroin that the defendant supplied to [R.B.] and [B.F.]."

When determining whether a non-guidelines sentence is substantively unreasonable, this court considers "the totality of the circumstances, including the extent of any variance from the Guidelines range, to determine whether, as a matter of substance, the sentencing factors in section 3553(a) support the sentence." *United States v. Gerezano-Rosales*, 692 F.3d 393, 400 (5th Cir. 2012) (internal quotation marks and citations omitted).  A non-guidelines sentence will be found substantively unreasonable when it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or

(3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006). "In making this determination, [this court] must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gerezano-Rosales*, 692 F.3d at 401 (internal quotation marks and citation omitted).

We agree with Robinson that in considering R.B.'s suicide, the district court used an irrelevant and improper factor. *Smith*, 440 F.3d at 708. Certainly, R.B. was distraught after his girlfriend's death. However, as Robinson argues, suicide is a complicated phenomenon that may be caused by any number of preceding events. When R.B. committed suicide months after B.F.'s death, he left no note suggesting his motivations. After an unsuccessful stint in rehab after B.F.'s death, he had started using drugs again and had come into conflict with his father. Indeed, a police officer working with the DEA testified that: "[T]here were some messages that were sent between [R.B.] and his father. His father was pretty upset in regards to some money issues. And obviously, his . . . drug addiction had pushed him to do things that his father wasn't happy with. And I believe, based on some of those messages, that he probably killed himself because of that." There was an insufficient basis to attribute R.B.'s death to that of his girlfriend, and thus the causal relationship was too attenuated to provide a basis for enhancing Robinson's sentence.

This error, however, was harmless, in the entire context of the sentencing. First, the court considered a broad range of § 3553(a) factors involving the defendant's history and characteristics, which included Robinson's extensive criminal history and his running of "a superstore of drugs"; the nature and circumstances of the offense and the seriousness of the offense; the kinds of sentences available; his history of violence; the guidelines range; the need to promote respect for the law, to provide just

punishment, to deter future similar criminal conduct by the defendant, and to protect the public; and the death of B.F., which Robinson does not dispute was the result of an overdose of heroin he supplied. *See* 18 U.S.C. § 3553(a)(1), (2)(A)–(C), (3), (4)(A).

Second, and critically, the court affirmed that he would have "imposed the same sentence, even if [he] had not made the definitive finding about the causation between [R.B.'s] suicide and the heroin that the defendant supplied to [R.B.] and [B.F.]." In *United States v. Valdez*, 726 F.3d 684, 698 (5th Cir. 2013), this court concluded that the district court's statement that it would impose the same sentence on remand, even if reversed on its interpretation of the guidelines, is evidence of harmless error.[1]

Even without consideration of R.B.'s suicide, the extensive array of evidence pertinent to the § 3553(a) factors supports the reasonableness of the sentence imposed by the district court. When combined with the court's unequivocal statement that it would have imposed the same sentence even without considering R.B.'s suicide, we conclude that the error was harmless.

---

[1] *See also United States v. Jones*, 833 F. App'x 528, 550 (5th Cir. 2020) (The "district court's statements at trial establish that it would have imposed the same sentence even if it had not applied" an enhancement, so the enhancement was harmless.); *United States v. Halverson*, 897 F.3d 645, 652 (5th Cir. 2018) ("The crux of the harmless-error inquiry is whether the district court *would* have imposed the same sentence . . . The record must show clarity of intent expressed by the district court, but such statements do not require magic words.") (internal citations and quotations omitted); *United States v. Ham-Molina*, 630 F. App'x 243, 245 (5th Cir. 2015) ("Because the district court's statements indicate that it would have imposed the same sentence without the alleged error for the same reasons, any error in imposing [an enhancement] is harmless."); *United States v. Gutierrez-Mendez*, 752 F.3d 418, 430 (5th Cir. 2014) (District court statement that it would have given the defendant the same sentence even if it was mistaken in its application of the guidelines renders any error harmless.); *United States v. Richardson*, 713 F.3d 232, 237 (5th Cir. 2013) ("[A]ny error in calculating the total offense level was harmless, given the district court's clear statements that it would have imposed the same sentence regardless of the correctness in the calculation.").

No. 19-11079

Accordingly, the sentence imposed by the district court is AFFIRMED.