# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2026

Lyle W. Cayce
Clerk

No. 25-40027

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DAVID LOPEZ, JR.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:24-CR-1-1

Before ELROD, *Chief Judge*, and SMITH and WILSON, *Circuit Judges*.

JENNIFER WALKER ELROD, *Chief Judge*:

In this appeal, David Lopez, Jr., contests his 360-month sentence, arguing that the district court should not have applied two particular enhancements to his base offense level. The district court properly imposed a five-level increase for circumstances in which "the defendant distributed" child pornography "in exchange for any valuable consideration, but not for pecuniary gain." But because we agree with counsel for both parties that the district court incorrectly applied a five-level enhancement for "a pattern of activity involving the sexual abuse or exploitation of a minor," we VACATE and REMAND for resentencing.

No. 25-40027

I

Lopez pleaded guilty to two counts of transportation of child pornography and two counts of possession of child pornography. *See* 18 U.S.C. § 2252A(a)(1), (a)(5)(B), (b)(1)–(2). The district court imposed multiple enhancements, including, as relevant here, a five-level enhancement for "distribut[ing]" child pornography "in exchange for any valuable consideration, but not for pecuniary gain," U.S. Sent'g Guidelines Manual § 2G2.2(b)(3)(B) (U.S. Sent'g Comm'n 2024),[1] and another five-level increase for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor," *id.* § 2G2.2(b)(5). Lopez objected to the former, but not the latter.

Once the district court had added all the enhancements, Lopez had an offense level of forty-two and a criminal-history category of V. This resulted in a Guidelines range of 360 months to life imprisonment. *Id.* ch. 5, pt. A (Sentencing Table). The district court adopted the presentence investigation report as the court's findings and legal conclusions. *See United States v. Arviso-Mata*, 442 F.3d 382, 385 n.10 (5th Cir. 2006) ("[T]he PSR 'is considered reliable and may be considered as evidence by the district court when making sentencing determinations.'" (quoting *United States v. Ramirez*, 367 F.3d 274, 277 (5th Cir. 2004))).

Having stated that it "ha[d] considered the Guidelines and f[ound] that a sentence within the Guidelines is consistent with and takes into account all the purposes of" 18 U.S.C. § 3553, the district court sentenced Lopez to 360 months in prison for the two transportation offenses and 240 months for the possession offenses. The court determined that Lopez

---

[1] The district court applied the 2024 edition of the Sentencing Guidelines, and we do the same.

should serve all counts concurrently "for a total cumulative sentence of 360 months"—the low end of Lopez's Guidelines range. *See* U.S.S.G. ch. 5, pt. A. The district court also imposed a life term of supervised release, as well as restitution and a special assessment. Lopez timely appealed. *See* Fed. R. App. P. 4(b)(A), (b)(A)(i).

## II

We consider whether the district court properly applied the distribution and pattern enhancements.

## A

Lopez maintains that the five-level distribution enhancement does not apply to him, but his arguments fail. Lopez objected to this enhancement in district court, so we review that court's application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Lawrence*, 920 F.3d 331, 334 (5th Cir. 2019); *United States v. Bacon*, 646 F.3d 218, 220 (5th Cir. 2011).

"A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005) (citing *United States v. Valencia*, 44 F.3d 269, 272 (5th Cir. 1995)). Under the clear-error standard, "we may not set [a district court's factual] findings aside unless, after examining the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 18 (2024) (quoting *Cooper v. Harris*, 581 U.S. 285, 309 (2017)).

The government must prove that enhancements apply by a preponderance of the evidence. *United States v. Halverson*, 897 F.3d 645, 652 (5th Cir. 2018). If the district court procedurally erred by applying the distribution enhancement, "remand is required" unless "the government

No. 25-40027

can establish that the error was harmless." *Id.* at 651 (citing *United States v. Delgado-Martinez*, 564 F.3d 750, 752–53 (5th Cir. 2009)).

1

The district court imposed a five-level enhancement that applies "[i]f the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). Per the Guidelines commentary, the phrase *the defendant distributed in exchange for any valuable consideration* means that the defendant "agreed to an exchange with another person under which the defendant knowingly distributed to that other person for the specific purpose of obtaining something of valuable consideration from that other person, such as other child pornographic material, preferential access to child pornographic material, or access to a child." *Id.* § 2G2.2 cmt. n.1; *see also id.* (defining *distribution*). Thus, the enhancement applies if "(1) the defendant agreed to an exchange with another person, (2) the defendant knowingly distributed child pornography to that person (3) for the purpose of obtaining something of valuable consideration, and (4) the valuable consideration came from that person." *Halverson*, 897 F.3d at 652.

That fourth requirement does not mean that the defendant must "actually receive 'valuable consideration' in exchange for distributing child pornography under . . . § 2G2.2(b)(3)(B)." *United States v. Fucito*, 129 F.4th 289, 292 (5th Cir. 2025) (quoting U.S.S.G. § 2G2.2(b)(3)(B)); *accord id.* at 295. The government must show only "that the distributor sent the pornography with the *intent* that the receiver (and not some third party) give valuable consideration in return." *Id.* at 295 n.4 (emphasis added) (citing *Halverson*, 897 F.3d at 651).

The district court correctly concluded that Lopez had an implicit agreement to distribute child pornography for the purpose of obtaining more

4

child pornography and that he indeed distributed it. *See* U.S.S.G. § 2G2.2 cmt. n.1; *Halverson*, 897 F.3d at 652. As that court found, Lopez participated in online "chatrooms" that "required him to submit child pornography images to receive additional child pornography images"—indeed, these "chatrooms" were created for the express purpose of "sending and receiving" such materials. A special agent testified that "some of these sources required frequent submission to avoid being a 'lurker,' someone who views but does not contribute." This apparent policy against "lurkers" shows that these chatrooms require participants to post child pornographic material to take part in the chatroom at all, such that Lopez could have been kicked out of the chatroom if he had not submitted child pornography.

To begin, we cannot say that the district court clearly erred in finding that Lopez had formed an implicit agreement to exchange child pornography. "Whether an agreement exists is a fact question reviewed for clear error." *Fucito*, 129 F.4th at 294. And the agreement may be explicit or implicit. *Id.* By joining a chatroom that allows an individual to view pornography only if he contributes similar materials, the individual implicitly agrees to distribute child pornography in exchange for more of the same. *See id.*; *Halverson*, 897 F.3d at 652. This is so especially where, as here, the individual may participate in the chatroom only by submitting pornographic material. The district court's finding that Lopez formed an implicit agreement to exchange child pornography with others when he entered that chatroom is "plausible in light of the record as a whole," so the district court did not clearly err. *Villanueva*, 408 F.3d at 203 (citing *Valencia*, 44 F.3d at 272).

The evidence also shows that Lopez "knowingly distributed child pornography" in these chatrooms with the goal of receiving additional child pornography from those with whom he shared it. *Halverson*, 897 F.3d at 652; *see Fucito*, 129 F.4th at 294–95. The factual basis to Lopez's guilty plea, which Lopez confirmed was true and correct, stated that Lopez "admitted to

viewing child pornography in [these] chat rooms." The fact that Lopez was able to view child pornography in these chatrooms, which condition access on sharing similar materials, shows that he gave child pornography to others with the goal of procuring more such materials from them. The district court thus correctly concluded that the five-level distribution enhancement applies. *Halverson*, 897 F.3d at 652.

2

Lopez insists that the enhancement does not apply because, in his view, none of the evidence demonstrates that he had a *quid pro quo* agreement with another person to distribute *to that person* with the specific purpose of getting something of valuable consideration *from that other person*. *See* U.S.S.G. § 2G2.2 cmt. n.1. As our court has previously noted, the distributor must have sent the pornography "with the intent that the receiver (and not some third party) give valuable consideration in return." *Fucito*, 129 F.4th at 295 n.4.

Lopez maintains that the government has not shown a specific agreement to exchange child pornography with another person to get something "from that person, and not some third party." We disagree: As we explained above, the district court properly determined that Lopez implicitly agreed to exchange child pornography with others in the chatroom and that he distributed with that intent.

That conclusion above accords with the Guidelines commentary.[2] Again, per the commentary, a defendant distributed in exchange for any

_____

[2] "[T]he Guidelines commentary is 'authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Martin*, 119 F.4th 410, 414 (5th Cir. 2024) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)), *cert. denied*, 145 S. Ct. 1454 (2025); *see also United States v. Vargas*, 74 F.4th 673, 677–78, 680–83 (5th Cir. 2023) (en banc). No party

valuable consideration if he "agreed to an exchange *with another person* under which the defendant knowingly distributed *to that other person* for the specific purpose of obtaining something of valuable consideration *from that other person*." U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added). To the extent that Lopez argues that an individual's agreement with a group will not qualify for the enhancement, we disagree. The Guidelines commentary does not prohibit the enhancement from applying where the defendant has agreed to exchange with another group of people as opposed to another individual. *See id.*

When interpreting Guidelines commentary, "we apply ordinary rules of statutory construction." *United States v. Austin*, 479 F.3d 363, 367–68 (5th Cir. 2007) (citing *United States v. Carbajal*, 290 F.3d 277, 283 (5th Cir. 2002)). And absent "a contrary indication, . . . the singular includes the plural (and vice versa)." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 129 (2012) (emphasis omitted). Thus, under the Guidelines commentary, the five-level distribution enhancement can apply where a defendant agrees (explicitly or implicitly) to exchange with a group of individuals and distribute to that group with the intent to receive from that group. *See* U.S.S.G. § 2G2.2 cmt. n.1. Put differently, a "person-to-people" agreement, as distinct from a "person-to-person" one, suffices.

Nor does our conclusion that the enhancement applies to Lopez's chatroom exchanges run afoul of the Guidelines' amendment history. *See, e.g.*, Scalia & Garner, *supra*, at 256, 432, 440 (favoring statutory history, "[t]he enacted lineage of a statute, including prior laws, amendments,

---

to this case argues that the commentary to the Guidelines at issue here suffers from any of these flaws.

codifications, and repeals," but not legislative history, "the proceedings leading to the enactment of a statute, including legislative hearings, committee reports, and floor debates"). In 2016, the Sentencing Commission revised § 2G2.2(b)(3)(B) to create the current five-level distribution enhancement, intending thus to "address[] circuit conflicts" regarding the mental state that the enhancement requires, especially "when the offense involves a peer-to-peer file-sharing program or network." U.S.S.G. app. C amend. 801.

For example, before the amendment, the Fourth Circuit had held that the enhancement applied if the defendant "(1) 'knowingly made child pornography in his possession available to others by some means'" (2) "for the specific purpose of obtaining something of valuable consideration, such as more pornography." *Id.* (quoting *United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013), *superseded by regulation*, U.S.S.G. § 2G2.2(b)(3)(B)). We, though, had applied the enhancement "when the defendant knowingly use[d] file-sharing software." *Id.* (citing *United States v. Groce*, 784 F.3d 291, 294 (5th Cir. 2015), *superseded by regulation*, U.S.S.G. § 2G2.2(b)(3)(B)). In the 2016 amendment, the Commission clarified that this five-level increase applies in the circumstances that the Guidelines currently describe. *Id.*; *see id.* § 2G2.2(b)(3)(B); *id.* § 2G2.2 cmt. n.1.

But the amendment did not indicate that defendants who use the kind of chatrooms in which Lopez participated are exempt from this distribution enhancement. *See id.* § 2G2.2(b)(3)(B); *id.* § 2G2.2 cmt. n.1. Lopez urges that the amendment "clearly rejected" our previous holding that the enhancement would apply "when a defendant knowingly use[d] file-sharing software." *Id.* app. C amend. 801; *see Groce*, 784 F.3d at 294. The amendment described a peer-to-peer file-sharing network as "a software application that enables computer users to share files easily over the [i]nternet." U.S.S.G. app. C amend. 801. These networks "do not require

a central server or use of email"; they simply "allow[] two or more users to essentially have access to each other's computers and to directly swap files from their computers." *Id.* "Some peer-to-peer programs automatically designate a user's files as 'public' (i.e., available for download by any other user of the program), whereas others permit a user to keep their own files private while still using the peer-to-peer software to download material." *United States v. Oliver*, 919 F.3d 393, 398 (6th Cir. 2019) (citing U.S.S.G. app. C amend. 801).

But peer-to-peer sharing, standing alone, is not the same thing as the chatrooms Lopez used in this case. *Groce*, which the Guidelines amendment rejected, held that any use of peer-to-peer file-sharing software qualified for the distribution enhancement—but that is not what is at issue here. *Groce*, 784 F.3d at 295. The district court found that Lopez's chatrooms require participants to share child pornography both to join the chatroom and to receive similar materials in return. Those chatrooms require active sharing with the knowledge and implicit agreement that the sharing will result in an exchange of child pornography and thus actually satisfy § 2G2.2(b)(3)(B)'s text. Peer-to-peer sharing, though, involves only intent to download files; any "knowing[] agreement" and intent to *exchange* need not be present. *See* U.S.S.G. § 2G2.2 cmt. n.1; U.S.SG. app. C amend 801; *Halverson*, 897 F.3d at 652; *Oliver*, 919 F.3d at 398.

This distinction makes intuitive sense. Pure downloads alone do not qualify a defendant for the enhancement because they do not show that he "knowingly distributed" to another "with the specific purpose of obtaining something of valuable consideration from that other person." U.S.S.G. § 2G2.2 cmt. n.1. That is why our court's pre-amendment holding that the enhancement applied where a defendant had merely "knowingly use[d] file-sharing software," *id.* app. C amend. 801; *Groce*, 784 F.3d at 294, was inconsistent with the "higher level of culpability" that the Guidelines assign

"when the defendant had the specific purpose of distributing child pornographic material to another person in exchange for valuable consideration," U.S.S.G. app. C amend. 801.

The 2016 amendment did not categorically proscribe applying the enhancement to circumstances that involve any sharing of files. It merely clarified that the defendant must distribute child pornography pursuant to an agreement under which he agrees to exchange such materials with the counterparty (or parties) to the agreement, with the intent to receive child pornography in return. *Id.* § 2G2.2 cmt. n.1; *Halverson*, 897 F.3d at 652. Lopez's case features that mental state for the reasons we have already discussed.

3

Our decision in *Halverson* is not to the contrary. There, the defendant pleaded guilty to possessing child pornography and appealed the application of the five-level distribution enhancement. 897 F.3d at 649. An agent who had "acted undercover" testified that "Halverson's use of peer-to-peer network applications gave him preferential access to more child pornography." *Id.* He further attested that "Halverson shared complete files with" the agent but "had not sought anything from him in exchange for the files." *Id.* We concluded that the government had "presented evidence to establish the [enhancement's] first three elements" but "failed to present any evidence to show that Halverson distributed any child pornography to receive 'something of valuable consideration from that [] person' with whom he traded." *Id.* at 652 (alteration in original) (quoting U.S.S.G. § 2G2.2 cmt. n.1); *see also id.* (holding that both errors were ultimately harmless).

Lopez submits that here, "just like in *Halverson*," no evidence shows that "Lopez had a quid pro quo agreement with another person to distribute child pornography from that other person." But his case differs from

*Halverson*. While Halverson had "shared complete files" with the agent, he "had not sought anything from [the agent] in exchange for sharing files." *Id.* at 649. That he received preferential access to his desired materials did not qualify him for the enhancement because the evidence did not show that he had intent to receive child pornography in exchange for his distribution. *Id.* at 649, 652; *see Fucito*, 129 F.4th at 295 n.4; *supra* pp. 7–10 (discussing why use of peer-to-peer applications, such as the ones Halverson used, do not, standing alone, make the enhancement applicable).

Here, on the other hand, Lopez admitted to viewing pornography in an online forum that he could access only by distributing child pornography and where he could view any pornography only by first sharing the same. As the district court correctly found, by entering into and participating in the chatrooms at issue in this case, Lopez made an implicit agreement with others in the chatroom to give and exchange child pornography.

4

At argument, Lopez emphasized the need for a "specific" agreement. But, as his counsel agreed, an implicit "person-to-people" agreement satisfies the Guidelines. It is unlikely that individuals who participate in these abhorrent online exchanges will sign an express contract authorizing their transactions. Lopez maintains that "generalized posting and downloading" does not suffice. But more was happening here. Lopez viewed child pornography in closed-access online fora whose metaphorical doors opened only to those who shared those materials. He thus entered into an implicit

agreement to give and receive child pornography. That satisfies the Guidelines commentary.

We hold that the district court properly applied the five-level distribution enhancement to Lopez.

B

We reach a different result with regard to the pattern enhancement, however. Lopez admits that he did not object to this enhancement in district court, so plain-error review applies. *Puckett v. United States*, 556 U.S. 129, 134–35 (2009). Lopez must show a clear or obvious "error or defect—some sort of '[d]eviation from a legal rule'—that has not been intentionally relinquished or abandoned." *Id.* at 135 (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 732–33 (1993)). The error must also have affected Lopez's "substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 734). And if Lopez can satisfy these requirements, we have "discretion to remedy the error," which we should exercise "only if the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (emphasis omitted) (quoting *Olano*, 507 U.S. at 736).

"The [g]overnment concedes that it was plain error" for the district court "to apply the § 2G2.2(b)(5) pattern enhancement" for a "pattern of activity involving the sexual abuse or exploitation of a minor," and we agree. U.S.S.G. § 2G2.2(b)(5). Such a pattern involves "two or more separate instances" of conduct that would qualify as, among other things, certain enumerated federal offenses or analogous state offenses. *Id.* § 2G2.2 cmt. n.1

(defining *pattern of activity involving the sexual abuse or exploitation of a minor* and *sexual abuse or exploitation*).

Lopez's offenses of conviction do not count.  *Id.* (excluding "possession, accessing with intent to view, receipt, or trafficking in" certain materials). And only one of his state offenses (sexual assault of a child) qualifies.  Thus, Lopez has not engaged in the required two instances of conduct that would cause the pattern enhancement to apply.  *See id.*  The district court clearly erred in concluding otherwise.  *See Puckett*, 556 U.S. at 135.

This error fulfills plain-error review's other requirements.  It affected Lopez's substantial rights.  *Id.*  Without the pattern enhancement, Lopez's offense level would have totaled thirty-seven, not forty-two; with his criminal-history category of V, this reduced offense level would have resulted in a Guidelines range of 324 to 405 months, not 360 months to life.  *See* U.S.S.G. ch. 5, pt. A.  "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."  *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).  And "[i]n the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings."  *Rosales-Mireles v. United States*, 585 U.S. 129, 145 (2018).  Because the district court plainly erred in applying the pattern enhancement on this record, we vacate and remand for resentencing within the proper sentencing range.

The parties dispute whether the government should be able to present new evidence to support the pattern enhancement on remand.  We have previously said that "[t]he government generally may not present new

evidence on remand when reversal is required due to the failure to present evidence originally." *United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 753 (5th Cir. 2012) (citing *United States v. Archer*, 671 F.3d 149, 168–69 (2d Cir. 2011)). But exceptions exist to that rule. "'[S]pecial circumstances' may justify an exception," *United States v. Villalobos*, 879 F.3d 169, 172 (5th Cir. 2018) (citing *Archer*, 671 F.3d at 168–69), "includ[ing] (1) 'where the government's burden was unclear'; (2) 'where the trial court prohibited discussion of the issue';" and "(3) 'where the evidence was, for a good reason, unavailable,'" *United States v. West*, 137 F.4th 395, 403 (5th Cir. 2025) (quoting *Villalobos*, 879 F.3d at 172); *see id.* (listing another factor that applies in restitution cases). On remand, the district court should consider these factors in determining whether to allow the government to present new pattern-enhancement evidence.

*     *     *

The district court properly applied the five-level distribution enhancement. But because the district court incorrectly imposed the pattern enhancement, we VACATE Lopez's sentence and REMAND for the district court to sentence Lopez in a manner consistent with this opinion. We express no view about what sentence the district court should impose on remand.