PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

v.

SEAN M. PRICE,

　　　　　　*Defendant-Appellant.*

No. 12-4010

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Senior District Judge.
(5:11-cr-00029-FPS-JES-1)

Argued: February 1, 2013

Decided: March 29, 2013

Before GREGORY and KEENAN, Circuit Judges, and
Robert E. PAYNE, Senior United States District Judge for
the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Gregory wrote the
opinion, in which Judge Keenan and Senior Judge Payne
joined.

---

## COUNSEL

**ARGUED:** Kristen Marie Leddy, OFFICE OF THE FED-
ERAL PUBLIC DEFENDER, Martinsburg, West Virginia,

for Appellant. Robert Hugh McWilliams, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee. **ON BRIEF**: Brendan S. Leary, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Wheeling, West Virginia, for Appellant. William J. Ihlenfeld, II, United States Attorney, Wheeling, West Virginia, for Appellee.

## OPINION

GREGORY, Circuit Judge:

Section 2G2.2 of the United States Sentencing Commission Guidelines Manual (Guidelines) provides sentencing enhancements for crimes involving the possession, distribution, or receipt of child pornography. Specifically at issue, Guidelines Section 2G2.2(b)(7) allows for a sentencing enhancement based on the number of images of child pornography involved in an offense. In July 2011, Sean Price pled guilty to accessing the internet via computer with the intent to view child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). At sentencing, the district court calculated Price's offense as involving more than 600 images of child pornography, and as a result, imposed a five-level sentencing enhancement pursuant to Section 2G2.2(b)(7)(D). Price now challenges the five-level enhancement. Price argues that duplicate images should not be counted when applying the Section 2G2.2(b)(7) sentencing enhancement. He alternatively argues that what he did—sending the same image multiple times via email—does not constitute duplication. For the reasons that follow, we reject Price's arguments and affirm his sentence.

I.

In late 2010, West Virginia State Police received a cyber tip from photobucket.com (a picture sharing website) that a

user uploaded images of child pornography on the website. State Police were able to trace the uploaded images to Price's email account. State Police then used this information to acquire a warrant to search Price's residence. The warrant was executed by State Police and the FBI on April 28, 2011. During the search, officers seized three computer hard drives and other computer storage media. Fifteen images of child pornography were found on the hard drives. While the search was taking place, Price consented to an interview with law enforcement officials, at which time he admitted to possessing child pornography, to posting images of child pornography on photobucket.com, and to posting a request for child pornography on an internet blog in 2008.

Less than two months after the search of Price's residence, on June 18, 2011, four separate emails with attachments of images depicting child pornography were sent to a total of ninety-three people. The emails were "spoofed" to make it seem as if they were sent by a West Virginia Police Sergeant. Email One contained twelve pornographic image attachments and was sent to nineteen people. Email Two contained twenty-three pornographic image attachments and was sent to thirty-eight people. Email Three contained an attachment of a single collage consisting of sixteen pornographic images and was sent to five people. And Email Four contained seventeen pornographic image attachments, one of which was a collage consisting of sixteen pornographic images, and was sent to thirty-seven people. In total, ninety-eight images of child pornography were emailed to ninety-three people.

In an attempt to get to the bottom of who was behind sending these emails, FBI agents went to Price's residence to request a consensual interview. Price agreed. During the interview, Price wrote out a statement of culpability admitting to sending the emails.

On July 12, 2011, Price was named in a one-count indictment alleging he accessed the internet via computer with the

intent to view child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). On August 25, 2011, Price filed a Notice of Intent to Plead Guilty to the indictment, and on August 29, 2011, Price entered his guilty plea. At the close of the plea hearing, the district court ordered U.S. Probation to prepare a Presentence Report (PSR). The PSR stated that "emails were sent out by [Price] ninety-three (93) times with a total of fifty-four (54) attachments." Using these figures, the PSR calculated the total number of images of child pornography involved in the offense to be "approximately 2,696 images."[1]

As a result of this calculation, the PSR recommended a five-level enhancement pursuant to Section 2G2.2(b)(7)(D) given that the offense involved 600 or more images of child pornography. Price filed several objections to the PSR. Relevant to this appeal, Price challenged the calculation of the number of pornographic images. Price argued that duplicate images cannot be counted when applying the Section 2G2.2(b)(7) enhancement. He alternatively argued that he did not duplicate the images when he sent them to multiple people via email. Price wanted the district court to only consider at sentencing the number of unique images he possessed or emailed, which in this case was 113. Resultantly, Price reasoned that since the number of unique images involved in the offense was 113, a two-level sentencing enhancement should have been applied under Section 2G2.2(b)(7)(A). The government filed a response agreeing with the PSR's calculation.

At sentencing, the district court heard arguments from both sides on Price's objections to the PSR. The court then concluded that when Price sent the same image to multiple recipients via email, Price duplicated the image, and each instance of duplication can be counted separately under Section

---

[1]The PSR erroneously calculated the number of attachments as 54 instead of 53. Price concedes that this miscalculation does not impact the resolution of this appeal.

2G2.2(b)(7)[2]. Thus, the district court concluded that the PSR calculation was essentially correct. Accordingly, the court imposed a five-level enhancement under Section 2G2.2(b)(7)(D), leaving Price with an offense level of thirty and a category III criminal history. The corresponding Guidelines range was 121 to 150 months. Price was sentenced to 120 months' imprisonment followed by ten years of supervised release. Price timely appealed, raising the same arguments before us as he did below.

## II.

The central question before us is whether the district court erred in counting each iteration of child pornography separately when applying Section 2G2.2(b)(7). Because this question involves Guidelines interpretation, we review the district court decision de novo. *See United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir. 1989); *United States v. Hudson*, 272 F.3d 260, 263 (4th Cir. 2001).

## A.

Section 2G2.2(b)(7) provides for a sentencing enhancement based on the number of images of child pornography involved in the underlying offense. Relevant here, if a crime involves more than 600 images, a five-level enhancement applies. U.S.S.G. § 2G2.2(b)(7)(D). Application Note 4 to Section 2G2.2(b)(7) reads: "For the purpose of determining the number of images under subsection (b)(7): Each photograph, picture, computer or computer-generated image, or any similar visual depiction shall be considered to be one image." The

---

[2]The images that Price distributed via email implicated the Section 2G2.2(b)(7) sentencing enhancement because the PSR concluded, and the district court agreed, that those images were relevant conduct to his conviction under Section 1B1.3(a)(1) of the Guidelines. Price does not argue on appeal that the district court erred in considering the distribution of these images as relevant conduct under Section 1B1.3(a)(1).

Application Note goes on to define an "image" as "any visual depiction . . . that constitutes child pornography."

Application Note 4 expressly states that each and any image of child pornography shall be counted when applying the Section 2G2.2(b)(7) enhancement, and the Application Note binds our interpretation of Section 2G2.2(b)(7). *See Hudson*, 272 F.3d at 263 (citing *United States v. Banks*, 130 F.3d 621, 624-24 (4th Cir. 1997)). There is nothing further in the Guidelines that limits this broad pronouncement. Price would have us read Section 2G2.2(b)(7) as only allowing unique images to be counted when applying this enhancement. This argument has no basis in the language of Section 2G2.2(b)(7). Quite contrary to Price's assertion, Application Note 4 suggests that when applying the number of images enhancement, each and every depiction of child pornography without regard to originality must be counted. We reject any uniqueness requirement that Price tries to read into Section 2G2.2(b)(7) and hold that any image without regard to its originality should be counted when applying this enhancement so long as that image depicts child pornography and is relevant to the underlying conviction.[3]

This conclusion is bolstered by the legislative history of Section 2G2.2(b)(7). Section 2G2.2(b)(7) was enacted under the Prosecutorial Remedies and Tools Against the Exploitation of Children Today (PROTECT) Act of 2003. Pub L. No. 108-21, 117 Stat. 650 (codified in scattered sections of 18 U.S.C.). The PROTECT Act was spurred by Congress's finding that "[c]hild pornography stimulates the sexual appetites

---

[3]Our holding brings us in accord with both the Sixth and Eighth Circuits. *See United States v. McNerney*, 636 F.3d 772, 777 (6th Cir. 2011) (holding "duplicate digital images, like duplicate hard copy images, should be counted separately for the purposes of calculating a sentence enhancement pursuant to § 2G2.2(b)(7)"); *United States v. Sampson*, 606 F.3d 505, 510 (8th Cir. 2010) ("The distribution of duplicate images increases the supply and availability of child pornography just as the distribution of unique images does.").

and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies . . . [and] to convince potential victims that the depicted sexual activity is normal." S. Rep. No. 108-2, at 3 (2003) (quoting S. Rep. No. 104-358, at 12-13). Therefore, Congress felt an "obligation to prevent the resurgence of the child pornography market," 149 Cong. Rec. H3059-02 (Apr. 10, 2003) (statement of Rep. Sensenbrenner), which required "stamping out the vice of child pornography at all levels in the distribution chain." 149 Cong. Rec. H2950-01 (Apr. 9, 2003) (statement of Rep. Sensenbrenner). Put simply, Congress has shown its clear intent to stop the proliferation of child pornography by enacting the PROTECT Act and the concomitant sentencing enhancements.

There is nothing before us that remotely indicates Congress was concerned with the unique characteristics of an image when it sought to punish child pornographers. In fact, Congress recognized that images of child pornography are rarely a "first-generation product," but still felt the need to impose a number of images sentencing enhancement. 149 Cong. Rec. S2573-02 (Feb. 24, 2003). Accordingly, when viewing the plain language of Section 2G2.2(b)(7) in conjunction with its legislative history, we find that the district court did not err by counting each image in each email separately when applying the Section 2G2.2(b)(7) enhancement.

## B.

Price attempts to draw a distinction between digital and hard copy images, arguing that if the same image is emailed multiple times, each email should not be counted separately under the Guidelines as that does not fit within the definition of duplication. While Price's concept of what constitutes duplication is dubious at best, his argument is inconsequential to our resolution of this case.

Price reproduced images of child pornography when he emailed a limited number of images of child pornography to

a large number of people. That Price reproduced the porno-
graphic images with the click of a "send" button as opposed
to the use of a photocopier does not sway the outcome; his
conduct still had the effect of increasing the number of images
of child pornography. *See generally United States v. Sullivan*,
451 F.3d 884, 890 (D.C. Cir. 2006) ("the prohibition against
possessing child pornography transported . . . by computer is
one important aspect of a comprehensive legislative scheme
aimed at eliminating traffic of child pornography."). Each
time Price sent an email with images of child pornography
attached he gave fodder to potential abusers who may now
have access to the images. Price's mass proliferation of child
pornography via email makes it almost impossible to know
who will come into possession of the images and that much
harder for law enforcement to eradicate the images' existence.

Under Price's interpretation of Section 2G2.2(b)(7), Price
could email the same image to one million people, and only
the one image would be attributable to him when applying the
number of images sentencing enhancement. Given the absurd
results that could abound, we refuse to accept Price's argu-
ment, as his conduct had the effect of exponentially multiply-
ing both the real and projected evils encapsulated within the
distribution of child pornography. As such, the district court
was true to both the spirit and letter of Section 2G2.2(b)(7) in
counting every image sent by Price to every person when
applying the number of images enhancement.

## III.

At bottom, Price cannot point to a single authority that has
adopted his interpretation of Guidelines Section 2G2.2(b)(7).[4]

---

[4]We note that the Third and Seventh Circuits have affirmed decisions
in which the district court judge did not count duplicates when applying
the number of images enhancement. *See United States v. Lacey*, 569 F.3d
319 n.1 (7th Cir. 2009); *United States v. Long*, 425 F.3d 482, 486-87 (7th
Cir. 2005); *United States v. Goff*, 501 F.3d 250, 255 n.9 (3d Cir. 2009).
These cases *did not* interpret Section 2G2.2(b)(7) and *did not* hold that
duplicates cannot be counted under Section 2G2.2(b)(7). The courts only
assumed, without deciding, that the district court did not err as a matter
of law by not counting duplicates.

And for good reason — his interpretation flies in the face of both the language of Section 2G2.2(b)(7) and the history behind its enactment. For these reasons, we find that the district court did not err as a matter of law when it counted each image in each email separately without regard to the uniqueness of the image when applying the Section 2G2.2(b)(7) enhancement. As such, we affirm the five-level enhancement applied pursuant to 2G2.2(b)(7)(D), and therefore affirm Price's sentence.

*AFFIRMED*