# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-11519

United States Court of Appeals
Fifth Circuit

**FILED**
March 18, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

BRANDON SHANE EUSTICE,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Defendant-appellant Brandon Shane Eustice ("Eustice") pleaded guilty, without a plea agreement, to one count of conspiracy to possess with intent to distribute an unspecified about of methamphetamine ("meth") in violation of 21 U.S.C. §§ 846, 841(a) & (b)(1)(C). The district court sentenced him to 84 months of imprisonment and three years of supervised release, which was below the guidelines range of 100 to 125 months. Eustice asserts three sentencing errors on appeal: (1) the district court erred in calculating the quantity of drugs attributable to him, (2) the district court erred in applying a sentence enhancement for maintaining a drug premises, and (3) the district

No. 18-11519

court erred in assigning two criminal history points for his state fraud conviction. We AFFIRM.

## FACTS AND PROCEEDINGS

Eustice admitted that from about March 2017 through January 10, 2018, he knowingly and willfully conspired with others to distribute meth, and "[m]embers of the conspiracy used Facebook, text messages and phone calls in addition to face to face meetings to coordinate the sale or [sic] narcotics to each other and to other individuals known and unknown." According to the PSR, Eustice received meth from Lawrence Boone ("Boone") and Alicia Murfield ("Murfield"), which he then distributed to his own customer base in Wichita Falls, Texas, and the surrounding areas. The PSR held Eustice accountable for 127.57 grams of meth that he received from Boone and 283.5 grams of meth that he received from Murfield, for a total of 411.07 grams of meth.

On September 20, 2017, officers executed a search warrant at Eustice's residence. According to the PSR, officers seized digital scales, meth pipes, an unknown quantity of meth, and "other drug paraphernalia consistent with drug trafficking." On December 14, 2017, officers served an outstanding state warrant for Eustice at his residence. According to the PSR, subsequent to arresting Eustice, officers observed a glass meth pipe, digital scales with suspected meth residue, and a plastic baggie containing suspected meth near the area where Eustice had been sitting. Based on these encounters, the PSR applied a two-level sentence enhancement for maintaining a premises for the purpose of distributing a controlled substance, pursuant to U.S.S.G. § 2D1.1(b)(12). After applying a three-level reduction for acceptance of responsibility, the PSR calculated Eustice's total offense level as 27.

In calculating Eustice's criminal history score, the PSR assigned two criminal history points for Eustice's state fraud conviction. Eustice pleaded guilty to this offense on February 9, 2017 and was sentenced to three years

deferred adjudication probation. On February 1, 2018, Eustice's probation was revoked, he was adjudicated guilty, and he was sentenced to 255 days of imprisonment. Based in part on this conviction, the PSR assessed Eustice's criminal history category as IV and the guideline imprisonment range as 100 months to 125 months.

Eustice filed objections to the PSR. Relevantly, he objected to the quantity of drugs attributed to him and application of the drug premises sentence enhancement. The probation officer filed an addendum to the PSR, rejecting all of Eustice's relevant objections. Eustice then reasserted his objections to the PSR as objections to the PSR addendum and raised a new objection to the assignment of two criminal history points for his state fraud conviction. He argued that only one point should have been assessed, which would have resulted in a criminal history category of III. With respect to the drug quantity calculation, Eustice affirmatively stated that he did not dispute the amount of meth attributed to him through Boone, a concession that he acknowledged and "st[ood] by" at oral argument before this panel. In response, to support the drugs attributed to Eustice through Murfield, the government provided text messages between Eustice and Murfield discussing numerous drug transactions, many of which took place at Eustice's residence.

At the sentencing hearing on November 13, 2018, Eustice re-urged his objections to the PSR and PSR addendum. The district court overruled the objections "for the reasons stated in the Government's Response and the Addendum." The district court adopted the probation officer's fact findings and conclusions as to the appropriate guidelines calculations but varied downward "based upon the Defendant's Sentencing Memorandum related to his childhood upbringing [and] his addiction" and sentenced Eustice to 84 months of imprisonment.

No. 18-11519

## DISCUSSION

### I.   Drug Quantity Calculation

First, Eustice challenges the district court's calculation of the amount of drugs attributable to him on four grounds: (1) the calculation was based on unreliable and insufficient evidence, (2) the district court improperly applied the multiplier method, (3) the district court included drugs that Eustice personally consumed in its calculation, and (4) the district court failed to discount the estimate to account for uncertainty in the calculation. The government agrees that Eustice preserved these issues. Therefore, we review the district court's legal interpretations of the guidelines de novo and its findings of fact, including the calculation of drugs attributable to Eustice, for clear error. *United States v. Clark*, 389 F.3d 141, 142 (5th Cir. 2004). The calculation will be upheld so long as it is "plausible in light of the record as a whole." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)).

We disagree that the district court's calculation was based on unreliable and insufficient evidence. In arriving at a sentence, the district court may consider any information that has sufficient indicia of reliability to support its probable accuracy, including estimates of drug quantities. *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006). Here, the district court considered the information in the PSR, the PSR addendum, Eustice's objections, and the government's responses to Eustice's objections, including the text messages between Eustice and Murfield. Eustice does not challenge the 127.57 grams of meth that were attributed to him through Boone, which he expressly agreed to in his objections to the PSR addendum. The 283.5 grams of meth that were attributed to Eustice through Murfield were adequately supported by the text messages that the government provided in response to Eustice's objections to the PSR addendum. Therefore, the total calculation of 411.07 grams of meth

4

attributable to Eustice is "plausible in light of the record read as a whole." *Betancourt*, 422 F.3d at 246 (quoting *Alford*, 142 F.3d at 831).

We also disagree that the district court improperly applied the multiplier method. Concerns about the "multiplier method" arise when the district court "extrapolate[s] from a known event to predict what happened in other *unknown* events." *United States v. Kearby*, 943 F.3d 969, 975 (5th Cir. 2019). Nowhere in the PSR is there any mention of extrapolation. Rather, the amounts attributed to Eustice were based on evidence regarding drug quantities involved in a number of transactions between Eustice and Boone and Murfield.

Eustice's argument that the district court erred by considering meth he purchased for personal use is similarly unavailing. In *Clark*, this court joined "every other circuit that ha[d] considered this issue" and held that a district court may properly consider drugs possessed by a defendant for his personal consumption when calculating a sentence for conspiracy to possess with intent to distribute. 389 F.3d at 142.

Finally, we reject Eustice's argument that the district court erred by refusing to discount the estimate to account for uncertainty. The drug quantity calculation was adequately supported, and Eustice cites no precedent demonstrating that reduction is required in these circumstances.

Therefore, the district court did not clearly err in calculating the quantity of meth attributable to Eustice.

## II. Drug Premises Sentence Enhancement

Next, Eustice challenges the district court's application of a two-level sentence enhancement for maintaining a drug premises pursuant to U.S.S.G. § 2D1.1(b)(12). He argues that this was (1) procedural error because the district court did not consider commentary note 17 to § 2D1.1(b)(12), and (2) substantive error because only bare assertions supported the enhancement.

No. 18-11519

The government agrees that Eustice preserved these arguments. Therefore, we review the district court's interpretation of the guidelines de novo and its findings of fact for clear error. *United States v. Haines*, 803 F.3d 713, 743 (5th Cir. 2015).

Guideline § 2D1.1(b)(12) instructs the district court to apply a two-level sentence enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." The enhancement "applies to a defendant who knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." § 2D1.1(b)(12) cmt. n.17. Although manufacturing or distributing need not be the sole purpose for which the premises is maintained, it must "be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id.* "In making this determination, the court should consider how frequently the premises was used by the defendant . . . for lawful purposes." *Id.*

The district court did not err procedurally. At sentencing, the district court need not discuss all the facts and reasoning relevant to its guidelines calculation. *United States v. Guzman-Reyes*, 853 F.3d 260, 266 (5th Cir. 2017). An adoption of the PSR's factual findings and conclusions is sufficient as long as those findings and conclusions are adequate to support the sentence imposed. *Id.* In this case, the probation officer discussed commentary note 17 to § 2D1.1(b)(12) in the PSR addendum and concluded that application of the sentence enhancement was warranted. At the sentencing hearing, the district court adopted "the Probation Officer's . . . fact findings and conclusions as to the appropriate Guideline calculations." Therefore, the district court implicitly considered commentary note 17 to § 2D1.1(b)(12) by adopting the probation officer's analysis.

6

No. 18-11519

Nor did the district court err substantively. The district court may consider any information with sufficient indicia of reliability when crafting a sentence. *Valdez*, 453 F.3d at 267. Here, the district court relied on the information in the PSR, the PSR addendum, Eustice's objections, and the government's responses to Eustice's objections. The items that law enforcement seized from Eustice's residence, including digital scales, and the text messages that Eustice exchanged with Murfield, which reference numerous drug transactions at Eustice's residence, constitute specific sources of evidence with sufficient indicia of reliability to support the district court's application of the enhancement.

Therefore, the district court did not err in applying the drug premises sentence enhancement.

## III.    Criminal History

Finally, Eustice challenges the district court's calculation of his criminal history score. This court reviews factual determinations made in applying the guidelines for clear error, but "[w]hether the sentencing guidelines apply to a prior conviction is a question of law, which we review *de novo*." *United States v. Valdez-Valdez*, 143 F.3d 196, 197–98 (5th Cir. 1998). Here, because the government agrees that Eustice preserved this issue and the parties only dispute which guidelines apply, our review is de novo.

Guideline § 4A1.1 instructs the district court to "[a]dd 3 [criminal history] points for each prior sentence of imprisonment exceeding one year and one month," § 4A1.1(a), "[a]dd 2 [criminal history] points for each prior sentence of imprisonment of at least sixty days not counted in (a)," § 4A1.1(b), and "[a]dd 1 [criminal history] point for each prior sentence not counted in (a) or (b)," § 4A1.1(c). Section 4A1.2(a)(1) defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt . . . ." And § 4A1.2(b)(1) defines "sentence of imprisonment" as "a sentence of incarceration . . . ."

No. 18-11519

The government argues that Eustice's 255-day imprisonment sentence for his state fraud conviction, which was imposed upon adjudication of guilt based on the revocation of his deferred adjudication probation, falls within the definition of a "prior sentence of imprisonment." In fact, § 4A1.2(k)(1) specifically instructs that upon a revocation of probation, the district court should "add the original term of imprisonment to any term of imprisonment imposed upon revocation," and use the resulting total "to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable."

Eustice disagrees. He argues that diversionary dispositions are always governed by § 4A1.2(f), which states that diversions from the judicial process without a finding of guilt result in no criminal history points, and "diversionary disposition[s] resulting from a finding or admission of guilt, or a plea of *nolo contendere*, in a judicial proceeding [are] counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . . ." According to Eustice, diversionary dispositions are to be handled in one of two ways: If there is no finding or admission of guilt, no criminal history points are assessed. Contrariwise, if there is a finding or admission of guilt, as there was in this case, one criminal history point is assessed under § 4A1.1(c). Eustice argues that U.S.S.G. § 4A1.1(a) and (b) are never applicable to diversionary dispositions.

In *Valdez-Valdez*, we affirmed an assessment of two criminal history points pursuant to U.S.S.G. § 4A1.1(b) for a deferred adjudication sentence involving six years of probation and 180 days of imprisonment on work release. *Valdez-Valdez*, 143 F.3d at 197, 203. Like Eustice, the defendant contended that only one criminal history point should have been assessed pursuant to U.S.S.G. § 4A1.1(c). *Id.* at 201. First, the court noted that "[a] sentence of probation is to be treated as a sentence under § 4A1.1(c) *unless a condition of probation requiring imprisonment of at least sixty days was imposed.*" *Id.* at

8

No. 18-11519

202 (quoting U.S.S.G. § 4A1.2, cmt. n.2). Since the defendant "was sentenced to—and apparently served—180 days in jail, albeit on work release," the court found that "within the contemplation of § 4A1.1(b), a condition of his probation required imprisonment of 'at least sixty days,'" and the conviction therefore counted for two criminal history points. *Id.* (emphasis omitted). The court went on to explain that "[a] plain reading of § 4A1.1 illustrates that Valdez's sentence fits squarely within subsection (b), and not within subsection (c)." *Id.*

> The only plausible way to apply § 4A1.1 both chronologically and logically, is to proceed from (a) to (b) to (c): Subsection (b) applies only to the extent a sentence is not counted in subsection (a), and subsection (c) applies only to the extent a sentence is not counted in either (a) or (b). As no part of Valdez's sentence is counted under (a), and his entire sentence is counted under (b), there is nothing left to count under (c). Indeed, his sentence would fall under (c) only if his deferred adjudication included no time to be served in jail.

*Id.*

This case is not directly controlled by *Valdez-Valdez* because Eustice's imprisonment sentence was imposed upon *revocation* of his deferred adjudication probation, rather than as a condition of his deferred adjudication probation. However, the court's rationale in *Valdez-Valdez* cannot be reconciled with Eustice's argument that U.S.S.G. § 4A1.1(a) and (b) are never applicable to deferred adjudications. Rather, applying the logic of *Valdez-Valdez* confirms that two criminal history points were properly assessed in this case. Eustice's sentence of 255 days of imprisonment is a "prior sentence" because it was "previously imposed upon adjudication of guilt." § 4A1.2(a)(1). It is also a "sentence of imprisonment" because it involves incarceration. § 4A1.2(b)(1). Therefore, proceeding from § 4A1.1(a) to (b) to (c), as *Valdez-Valdez* instructs, it is clear that no part of Eustice's sentence is counted under (a), his entire sentence is counted under (b), and there is thus nothing left to count under (c). Subsection (c) would apply only if the deferred adjudication

9

had not resulted in at least 60 days of imprisonment at the time of the federal sentencing. Here, Eustice's revocation had resulted in 255 days of imprisonment at the time of his federal sentencing.

This interpretation of the guidelines is consistent with the Eighth Circuit's approach in *United States v. Townsend*, 408 F.3d 1020 (8th Cir. 2005). There, the court affirmed an assessment of two criminal history points for the defendant's deferred judgment on a state burglary conviction where the defendant was twice found in violation and sentenced to terms of imprisonment totaling seventy-five days. *Id.* at 1025–26. The court held that these probation violations and resulting prison sentences were effectively probation revocations that fell within U.S.S.G. § 4A1.2(k)(1). *Id.* at 1026. Further, "[e]ven assuming the sentences could not be considered revocations of probation," the court found that the sentences were "countable under section 4A.1.1(b)" because they clearly fell within the definition of "prior sentence." *Id.*

Eustice is correct that the Eleventh Circuit took a slightly different approach in *United States v. Baptiste*, 876 F.3d 1057 (11th Cir. 2017), but that case is distinguishable. There, the defendant had a state court conviction described in the PSR as "[a]djudication withheld, 198 days time served." *Id.* at 1059. The court held that, "where, as here, a defendant has pled guilty to a prior crime and adjudication has been withheld, that disposition must be counted for a single criminal-history point under § 4A1.1(c) of the Guidelines, regardless of whether the sentencing court purported to impose—or even actually imposed—198 days or no days of imprisonment." *Id.* The court reasoned that sentences imposed upon deferred adjudications typically fall outside the statutory definition of "prior sentence" because no adjudication of guilt occurs. *Id.* at 1062 (citing U.S.S.G. § 4A1.2(a)(1)). The only exception is when a defendant pleads guilty or nolo contendere, in which case one criminal history point should be assessed under § 4A1.1(c). *Id.* Applying the statutory

interpretation canon "expressio unius," the court found that the express inclusion of U.S.S.G. § 4A1.1(c) in § 4A1.2(f) implies the exclusion of the rest of § 4A1.1, including § 4A1.1(b). *Id.*

This application of "expressio unius" to U.S.S.G. § 4A1.2(f) could support Eustice's contention that § 4A1.1(a) and (b) are never applicable to deferred adjudications. However, the Eleventh Circuit only needed to apply that canon of construction because it concluded that the sentence at issue did *not* fall within the definition of "prior sentence" in § 4A1.2(a)(1). Here, by contrast, Eustice's sentence was imposed upon adjudication of guilt—when his probation was revoked. It therefore falls within the definition of "prior sentence," and § 4A1.1(b) applies by its own terms—it need not be read into § 4A1.2(f), where Congress may have intentionally excluded it.

Therefore, the district court properly assigned two criminal history points.

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.