# United States Court of Appeals
## for the Fifth Circuit

_____

No. 23-20260

_____

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2025

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Scot Fucito,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CR-719-6

_____

Before Dennis, Willett, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Scot Fucito pled guilty of conspiracy to receive and distribute child pornography and was sentenced to 240 months in prison. On appeal, he contends his sentence was wrongly enhanced. We AFFIRM. In doing so, we clarify that (1) *United States v. Halverson*, 897 F.3d 645 (5th Cir. 2018), does not require a defendant to actually receive "valuable consideration" in exchange for distributing child pornography under United States Sentencing Guideline ("USSG") § 2G2.2(b)(3)(B); and (2) duplicate electronic images count as distinct images for purposes of USSG § 2G2.2(b)(7)(D).

No. 23-20260

## I. Background

In May 2019, Fucito repeatedly sent online child pornography to an undercover agent ("UC1") on a platform called FreeIRC. Fucito initiated the conversation by asking if UC1 "was married, had children, and noting they lived in the same area based on their usernames." He made further attempts on two subsequent days, but UC1 was not at his computer and did not respond. Two days later, Fucito messaged UC1 asking about his children's ages and if UC1 was sexually active with them. In response, UC1 stated he had a four-year-old daughter and asked if Fucito had ever been sexually active with children. Fucito responded that, in the past, he had regularly been sexually active with his girlfriend and her nine-year-old daughter.

Five days later, Fucito sent UC1 a link to a 12 minute 40 second video containing child pornography. Fucito asked UC1 if he had "ever seen this girl" and stated he "[w]as trying to get you to respond to me. And to show you that I am not a cop." Fucito then sent a link to a 1 minute 20 second video also containing child pornography. The next day, Fucito messaged UC1 stating "if UC1 could get his four-year-old daughter alone, he could meet up," and if "[y]ou show me how you explore with her [] I could give you ideas to move it forward." Fucito also asked whether UC1 "had ever given his daughter Benadryl, so he could sexually abuse her without [her] knowing anything happened."[1]

A few months later, federal agents executed search warrants on Fucito and other FreeIRC users. Forensic searches on Fucito's computers, cell

---

[1] Outside his interaction with UC1, Fucito also viewed and approvingly commented on child pornography videos posted by other users on FreeIRC at least three times.

phones, and other electronic devices found 704 child pornography images (526 unique). An additional 653 images (576 unique) were categorized as child exploitative. Many of the images depicted either child abuse, including of infants and toddlers, or sadomasochism.

A federal grand jury indicted Fucito for one count of conspiracy to receive and distribute child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) and one count of conspiracy to advertise child pornography, in violation of § 2251(d) and (e).[2] Fucito pled guilty of conspiracy to receive and distribute, but not conspiracy to advertise, which the Government and district court accepted.

Applying the 2021 Sentencing Guidelines, the PSR determined Fucito's base offense level was 22 due to a prior conviction for attempted criminal sexual contact with a minor under § 2252A(b)(1). It also added 18 levels of enhancements, two of which are at issue here:

- +5 levels for distribution of child pornography "in exchange for any valuable consideration . . . but not for pecuniary gain," pursuant to USSG § 2G2.2(b)(3)(B); and

- +5 levels for possession of "600 or more images" pursuant to USSG § 2G2.2(b)(7)(D).

Due to Fucito's acceptance of responsibility, the court reduced his total offense level to 37 with a criminal history category of II. His recommended sentencing range was 235–40 months because § 2252A(b)(1) imposes a 240-month statutory maximum.

Both sides objected—the Government to the maximum being only 240 months, and Fucito to the five-level enhancements and the lack of a

---

[2] The grand jury also indicted, and the Government is prosecuting, several other FreeIRC users as well as channel administrators.

No. 23-20260

minor role reduction under USSG § 3B1.2(b). The court overruled all objections, adopted the PSR, and sentenced Fucito to 240 months. Fucito timely appealed.

## II. Standard of Review

Because Fucito objected to the PSR, we review the court's factual findings for clear error and its interpretation of the Sentencing Guidelines *de novo*. *Halverson*, 897 F.3d at 651.

## III. Discussion

Fucito contests his sentence on three grounds. First, he argues he should not have received a "valuable consideration" enhancement because he had no agreement with the agent and, in any event, he did not *actually* receive any consideration. Second, he argues the court should not have counted duplicate electronic images towards the number of images possessed. Third, he argues he was entitled to a minor role reduction.

### A. Exchange for Valuable Consideration

Fucito first argues that there is no evidence he agreed to distribute child pornography for valuable consideration and that, even if he did, *Halverson* requires he actually received it. We disagree.

The relevant Guideline states: "If the defendant distributed [child pornography] in exchange for any valuable consideration, but not for pecuniary gain, increase by 5 levels." USSG § 2G2.2(b)(3)(B). The Guideline commentary, which we generally "consider . . . authoritative," *United States v. Wise*, 447 F.3d 440, 446 (5th Cir. 2006), explains:

> ***The defendant distributed in exchange for any valuable consideration*** means the defendant *agreed to an exchange* with another person under which the defendant knowingly distributed to that other person *for the specific purpose of*

4

> *obtaining something of valuable consideration from that other person*, such as other child pornographic material, preferential access to child pornographic material, or access to a child.

USSG § 2G2.2 cmt. n.1 (emphasis added).

In *Halverson*, we interpreted this language to require the Government to prove: "(1) the defendant agreed to an exchange with another person, (2) the defendant knowingly distributed child pornography to that person (3) for the purpose of obtaining something of valuable consideration, and (4) the valuable consideration came from that person." 897 F.3d at 652. Fucito argues the court erred on prongs one and four.

**1.**

Under *Halverson*'s first prong, the defendant must have "agreed to an exchange with another person." *Ibid.* Whether an agreement exists is a fact question reviewed for clear error. *See United States v. Oliver*, 919 F.3d 393, 404 (6th Cir. 2019); *United States v. Morehouse*, 34 F.4th 381, 393 n.12 (4th Cir. 2022); *United States v. Randall*, 34 F.4th 867, 873 (9th Cir. 2022). Fucito contends no evidence shows he had an agreement with UC1. We disagree.

The record amply shows that Fucito implicitly agreed to send UC1 child porn in exchange for access to UC1's minor daughter. *See, e.g.*, *Oliver*, 919 F.3d at 403 (holding an agreement under § 2G2.2(b)(3)(B) can be "explicit[] or implicit[]"). As discussed, Fucito first asked if UC1 had children, noted their geographic proximity, and asked if UC1 was sexually active with his four-year-old daughter. He then admitted he had been sexually active with a nine-year-old. After learning all this, Fucito sent UC1 two links to child pornography and, the very next day, sought to strike a deal that "if UC1 could get his four-year-old daughter alone, he could meet up" and if "[y]ou show me how you explore with her [] I could give you ideas to move it forward." The district court found that this evidence showed an implicit

5

agreement. We see no clear error in that finding.[3] *See, e.g.*, *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005) (requiring only that the record plausibly support the court's findings).

**2.**

We turn to *Halverson*'s fourth prong. Prongs two and three are obviously met: Fucito knowingly distributed child porn to UC1 (prong two) to obtain valuable consideration (prong three). *See Halverson*, 897 F.3d at 652; *see also* USSG § 2G2.2 cmt. n.1 ("valuable consideration" may include "other child pornographic material, preferential access to child pornographic material, or *access to a child*") (emphasis added). The only question is whether that valuable consideration "came from [UC1]," as *Halverson*'s fourth prong requires. 897 F.3d at 652. Fucito argues *Halverson* demands that he actually received the valuable consideration—*i.e.*, sexual access to UC1's four-year-old daughter. That is wrong.

*Halverson* merely restated the commentary's requirement that a defendant send someone child porn "for the specific purpose of obtaining something of valuable consideration *from that other person*." USSG § 2G2.2 cmt. n.1 (emphasis added). But that text only examines the defendant's reason ("specific purpose") for sending the material (to "obtain[] . . . valuable consideration from that other person").[4] It states no

_____

[3] Indeed, at his re-arraignment hearing, Fucito admitted he "and at least one other person made an agreement" to distribute and receive child pornography. The only person he could have made an agreement with was UC1. Outside his messages with UC1, Fucito merely commented approvingly on a few other child pornography posts.

[4] Prior to the 2016 Sentencing Guidelines amendments, we held that merely using a peer-to-peer file sharing program was enough to constitute an agreement to exchange child pornography. *See United States v. Groce*, 784 F.3d 291, 294–95 (5th Cir. 2015), *superseded by regulation*. Addressing a circuit split on this issue, *see Oliver*, 919 F.3d at 398, the 2016 amendment clarified that the distributor must have sent the pornography with the

requirement that the consideration was actually received. The commentary's plain language controls. *See United States v. Vargas*, 74 F.4th 673, 680 (5th Cir. 2023) (en banc) (guideline commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline") (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).[5]

Fucito believes *Halverson* added an "actual receipt" requirement to the commentary. But courts cannot add to guidelines commentary as if they were adjuncts of the Sentencing Commission.[6] To be sure, *Halverson*'s wordsmithing could have been sharper. But judicial opinions are not typically "parsed as though ... dealing with [the] language of a statute" but are instead "read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–74 (2023) (citation omitted). The context here is obvious: *Halverson* was applying the text of § 2G2.2(b)(3)(B), which contains no actual receipt requirement.[7]

———————————————

intent that the receiver (and not some third party) give valuable consideration in return. *See Halverson*, 897 F.3d at 651.

[5] No party contends the commentary violates the Constitution or federal law or is inconsistent with, or plainly misreads, § 2G2.2(b)(3)(B). *See Stinson*, 508 U.S. at 38.

[6] *See Yates v. Collier*, 868 F.3d 354, 369 (5th Cir. 2017) (explaining "our task is to give effect to the language Congress has enacted, not to read additional meaning into the statute that its terms do not convey"); *Vargas*, 74 F.4th at 682 ("[U]nlike an agency's gloss on its regulations, the Commission's role in promulgating and interpreting guidelines is sanctioned by statute.").

[7] As the Government points out, we have only applied *Halverson* in two unpublished cases. *See United States v. Dedual*, 760 F. App'x 339 (5th Cir. 2019) (unpublished); *United States v. Furzland*, 751 F. App'x 568 (5th Cir. 2019) (unpublished). Neither helps Fucito. Both decisions merely restated *Halverson*'s fourth prong but did not rely on any "actual receipt" requirement. *See Dedual*, 760 F. App'x at 340–41 (finding harmless error because district court would have imposed the same sentence regardless); *Furzland*, 751 F. App'x at 569 (vacating because district court improperly inferred "exchange for valuable consideration" from program's file-transfer capability). To the

No. 23-20260

The Sixth and Ninth Circuits agree that § 2G2.2(b)(3)(B) contains no actual receipt requirement. *See Oliver*, 919 F.3d at 403–04 (holding "the defendant need not have received the valuable consideration in order for the enhancement to apply"); *Randall*, 34 F.4th at 872 ("[W]e can't find a requirement that the defendant must also *receive* the valuable consideration from the other person."). True, those circuits expressed uncertainty about whether *Halverson* really imposed such a requirement. *See Oliver*, 919 F.3d at 403 (disagreeing with *Halverson* "[t]o the extent" it requires actual receipt); *Randall*, 34 F.4th at 872 (stating *Halverson* "potentially adopted" that view). We confirm today that *Halverson* does not (and never did) insert an actual receipt requirement into § 2G2.2(b)(3)(B).

Finally, consider the absurdity of an actual receipt requirement here. As the Sixth Circuit explained, "a requirement that the defendant actually receive the thing of value (be it additional child pornography or access to the child) would undoubtedly lead to the very action the enhancement strives to prevent: further distribution of child pornography and the continued victimization of children." *Oliver*, 919 F.3d at 403. Moreover, a receipt element would impose "a particularly perverse requirement" on an undercover agent "who is unable to comply with the defendant's request" to exchange child pornography. *Ibid.* Accepting Fucito's view would hamstring law enforcement's ability to combat child pornography through undercover sting operations. *See United States v. Diaz-Maldonado*, 727 F.3d 130, 137 (1st Cir. 2013) (observing "we accept sting operations as an important tool of law enforcement"); Graeme R. Newman, *Sting Operations:*

---

extent either case misread *Halverson* to impose an actual receipt requirement, such a reading would conflict with the commentary's plain text. *See United States v. Torres-Jaime*, 821 F.3d 577, 582 (5th Cir. 2016) ("Unpublished opinions, although not precedential, *may be* considered persuasive authority.") (emphasis added).

*Community Oriented Policing Services*, U.S. Dep't of Just., 22–23 (2007) (discussing use of online sting operations "to track down and snare would-be child molesters or child pornographers").

\*\*\*

In sum, the district court did not err by imposing a five-level enhancement under USSG § 2G2.2(b)(3)(B).

## B. Duplicate Images

Fucito next argues the court erred by counting duplicate electronic images when applying USSG § 2G2.2(b)(7)(D)'s five-level enhancement for possession of 600 or more images. We disagree.

The guideline states that "[i]f the offense involved . . . 600 or more images, increase [the sentence] by 5 levels." USSG § 2G2.2(b)(7)(D). The commentary explains that "images means any visual depiction, as defined in 18 U.S.C. § 2256(5), that constitutes child pornography." *Id.* § 2G2.2 cmt. n.6(A). Essentially, any data that can be converted into child pornography constitutes an "image."[8] The commentary further directs that "(f)or purposes of determining the number of images . . . *[e]ach* photograph, picture, computer or *computer-generated image*, or any similar visual depiction shall be considered to be one image." *Id.* § 2G2.2 cmt. n.6(B)(i) (emphasis added).

_____

[8] Section 2256(5) defines a "visual depiction" broadly as including "undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format."

No. 23-20260

Our court has not yet decided whether a court errs by counting duplicate images for sentencing enhancement purposes.[9] The commentary plainly supports the Government. As noted, it directs courts to count "*[e]ach* photograph, picture, computer or computer-generated image, or any similar visual depiction[.]" USSG § 2G2.2 cmt. n.6(B)(i) (emphasis added). Interpreting this language, courts have counted duplicate hard copies as discrete images. *See United States v. McNerney,* 636 F.3d 772, 780 (6th Cir. 2011); *United States v. Price*, 711 F.3d 455, 459–60 (4th Cir. 2013). We see no reason to take a different approach to computer-generated images.

This reading is supported by every circuit to have addressed the issue. *See Price*, 711 F.3d at 459 ("We reject any uniqueness requirement . . . and hold that any image without regard to its originality should be counted when applying this enhancement so long as that image depicts child pornography and is relevant to the underlying conviction."); *McNerney,* 636 F.3d at 777 (holding "duplicate digital images, like duplicate hard copy images, should be counted separately for purposes of calculating a sentence enhancement pursuant to § 2G2.2(b)(7)"); *United States v. Sampson*, 606 F.3d 505, 510 (8th Cir. 2010) ("The distribution of duplicate images increases the supply and availability of child pornography just as the distribution of unique images does."); *United States v. Ardolf*, 683 F.3d 894, 902 (8th Cir. 2012) ("The

---

[9] We alluded to, but did not decide, the issue in *United States v. Havens*, 331 F. App'x 280 (5th Cir. 2009) (unpublished). There, the defendant objected to his five-level enhancement because "there was evidence at trial that some of the images he possessed were duplicates." *Id.* at *2. He pointed to no evidence besides his own objection, however. Without analysis of § 2G2.2(b)(7)(D)'s text, we said the PSR demonstrated "a total of 937 images" and that it was "the defendant's burden to rebut the information contained in the PSR." *Ibid.* Because "objections do not suffice as competent rebuttal evidence," we rejected his argument because the defendant did not "come forward with any evidence at sentencing" for this objection. *Ibid. Havens* provides no guidance on whether the text of § 2G2.2(b)(7)(D) or its commentary permit counting duplicate images.

'plain reading' of U.S.S.G. § 2G2.2, cmt. n.4(B) requires counting duplicates as separate images for purposes of possession.").

Fucito suggests there is a circuit split on this issue, but we disagree. He cites *United States v. Lacey*, 569 F.3d 319 (7th Cir. 2009). But in *Lacey*, the Seventh Circuit referenced duplicates only to note that the defendants still exceeded 600 images even *if* the court discounted non-unique images.[10] He also relies on *United States v. Goff*, 501 F.3d 250 (3d Cir. 2007), which fares little better. There, the district court sentenced the defendant only to four months (instead of a recommended 37 to 46) given his clean record. *Id.* at 253. On appeal, the Government argued the sentence was unreasonably low, and the Third Circuit agreed. *Id.* at 254–55. The court stated in a footnote that "Goff should only have received a four-level enhancement" because the Government "determined after sentencing that many of the 600 images were duplicates." *Id.* at 255 n.9.

But the *Goff* footnote was likely dicta, as another circuit has pointed out. *See Sampson*, 606 F.3d at 509 (describing *Goff*'s footnote as "dicta"). And other circuits have noted that the Seventh and Third Circuits did not squarely address the duplicate-image issue but "only assumed, without deciding, that the district court did not err as a matter of law by not counting duplicates." *Price*, 711 F.3d at 460 n.4 (discussing Seventh and Third Circuits); *see also McNerney*, 636 F.3d at 775 n.3 (describing *Goff* as neither explicitly addressing the question nor analyzing the Guidelines' text). So, the Government is correct that there is no established circuit split on counting

––––––––––––––––––––––

[10] *See Lacey*, 569 F.3d at 322 (even discarding "duplicate images, those of poor quality or small size, and any image that did not clearly portray minors, the district court narrowed the total number . . . to around 2,000 images").

duplicate images. Even if there were, though, it would be 3-1 against Fucito. In any event, we must follow the commentary's plain language.

In sum, the district court did not err by imposing a five-level enhancement under USSG § 2G2.2(b)(7)(D).

## C. Minor Role Adjustment

Finally, Fucito argues the court erred by not granting him a two-level reduction for his minor role in the conspiracy to distribute child pornography. We again disagree.

A court may grant a two-level decrease if the defendant was a "minor participant" in the criminal conspiracy. *See* USSG § 3B1.2(b). A "minor participant" is "a defendant . . . who is less culpable than most other participants in the criminal activity." *Id.* § 3B1.2, cmt. n.5. To determine whether a defendant is a minor participant, courts consider a non-exhaustive list of factors including: (1) the defendant's understanding of the criminal activity; (2) the defendant's involvement in planning or organizing; (3) the defendant's exercise of decision-making authority or influence over decisions; (4) the defendant's participation in the actual criminal acts; and (5) the degree the defendant stood to benefit. *Id.* § 3B1.2, cmt. 3(C).

Whether Fucito was a minor participant is a factual question reviewed for clear error. *United States v. Sanchez-Villarreal*, 857 F.3d 714, 721 (5th Cir. 2017). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *Villanueva*, 408 F.3d at 203. The defendant bears the burden of showing he is entitled to a role reduction. *See United States v. Angeles–Mendoza*, 407 F.3d 742, 753 (5th Cir. 2005). And whether to grant a role reduction "is based on the totality of the circumstances and is heavily dependent upon the facts of the particular case." *United States v. Brumfield*, 89 F.4th 506, 523 (5th Cir. 2023) (cleaned up).

Fucito did not meet his burden of showing he played a minor role. He relies only on the fact that, unlike other codefendants, he wasn't an "administrator[ ], moderator[ ], [or] poster[ ]" in the FreeIRC messaging system. But that fails to show that Fucito was "substantially less culpable than *the average participant*," USSG § 3B1.2 cmt. n.3(A) (emphasis added).

Moreover, the record amply shows that Fucito played an average, not a minor, role in the conspiracy. The PSR defined "the *average participant*" in the scheme as "the pool of individual users who accessed the IRC networks and the chat rooms within those networks seeking [child porn], such as the defendant." Fucito regularly used FreeIRC for years, understood the scope and structure of the criminal activity, and had absolute decision-making over his distribution and receipt of child pornography. The PSR also went on to discuss how Fucito "did not hold any position of control or authority," and he thus "was properly assessed an average role." His codefendants, on the other hand, "occupied an aggravating role" and "exerted a level of decision-making authority and control over the average participants" which merited "the greatest level of an aggravating role in the offense." The court adopted the PSR's findings after overruling Fucito's objections that he played a minor role. So, the record supports the court's finding that Fucito was an average participant and did not merit a minor role reduction. *See United States v. Bello-Sanchez*, 872 F.3d 260, 264 (5th Cir. 2017) (no clear error if record as a whole "support[s] a plausible judgment in either direction").

Fucito responds that the court erred by not making fact findings on each of the guideline's five factors, pointing to *United States v. Rodriguez*, 44 F.4th 1229, 1233 (9th Cir. 2022). We disagree. Under our precedent, "[a] district court [i]s not required to expressly weigh each factor in § 3B1.2 on the record." *United States v. Torres-Hernandez*, 843 F.3d 203, 209 (5th Cir. 2016). In fact, the "requirement that the district court articulate a sufficient

13

factual basis for the denial of a minor role adjustment can be satisfied through implicit findings, such as when the district court adopts the presentence report." *See United States v. Maldonado*, No. 23-50056, 2024 WL 962377, at *4 (5th Cir. Mar. 6, 2024) (unpublished); *United States v. Bolanos*, 480 F. App'x 756, 757 (5th Cir. 2010) (unpublished) (citing *United States v. Gallardo–Trapero*, 185 F.3d 307, 324 (5th Cir. 1999)). That is precisely what the district court did here. In doing so, the court implicitly "adopted the Probation Officer's fact findings and conclusions as to the appropriate Guideline calculations." *United States v. Eustice*, 952 F.3d 686, 692 (5th Cir. 2020) (cleaned up). Because "those findings and conclusions are adequate to support the sentence imposed," the court did not err. *Ibid.*[11]

In sum, the district court did not err by not granting Fucito a minor role reduction.

AFFIRMED

---

[11] *See also United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir. 1994) (noting that "we have allowed the district court to make implicit findings by adopting the PSR"); *United States v. Ajayi*, 64 F.4th 243, 251 (5th Cir. 2023) ("[T]he district court adopted the PSR, which adequately described [the defendant's crime]. Nothing more was required.").